John **LELAND**, D.D.S., Appellant,

v.

George C. **BRANDAL** & Ruth
L. **Brandal**, Appellees.

No. 04–05–00855–CV.

Court of Appeals of Texas,
San Antonio.

Sept. 13, 2006.

Rehearing Overruled Oct. 16, 2006.

---

David Stephenson, Clemens & Spencer, P.C., San Antonio, for appellant.

Beth Watkins Squires, Law Office of Beth Squires, Phil Watkins, Charles Shattles, Phil Watkins, P.C., San Antonio, for appellees.

Sitting: SARAH B. DUNCAN, Justice, SANDEE BRYAN MARION, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by REBECCA SIMMONS, Justice.

John Leland, D.D.S., appeals from the denial of his motion challenging the expert report in the underlying medical malpractice lawsuit brought by George C. Brandal and Ruth L. Brandal. In his one appellate point of error, Leland claims the trial court abused its discretion in denying his objections and Motion to Strike Plaintiff's Expert Reports based on the experts' failure to: (1) show a causal relationship and (2) establish that Dr. Gray is properly qualified to give an expert opinion. Because we hold that the Brandals' expert, Dr. Gray, failed to establish his qualifications in his report, we reverse the trial court's order and remand the cause to the

trial court for further proceedings consistent with this opinion.

## BACKGROUND

This is an interlocutory appeal of the trial court's order denying Leland's Objections and Motion to Strike the Experts' Reports of Dr. Neal H. Gray and Dr. Lisa B. Masters. Leland is a dentist specializing in general dentistry. Brandal was a patient of Leland for the purpose of obtaining dentures. On April 10, 2003, Leland removed three of George C. Brandal's teeth. Subsequently, on April 17, 2003, Brandal returned to Leland's office for a post-operative consultation.

Brandal asserts that Leland instructed him to stop taking his anticoagulant medication, Plavix and aspirin, prior to any further extractions. Brandal claims he stopped taking his medication on approximately April 25, 2003. On April 28, 2003, Leland extracted nine more of Brandal's teeth. The next day, approximately eighteen hours after the extractions, Brandal suffered a stroke leaving him paralyzed on his right side and unable to speak.

The Brandals filed suit against Leland on July 11, 2005 alleging malpractice by negligently advising Brandal to stop taking his anticoagulant medication. After the Brandals served Leland with the expert reports of Dr. Gray and Dr. Masters, Leland moved to strike the experts' reports asserting that the reports failed to comply with the statutory requirements. Leland appeals the trial court's order denying his motion. ·

## STANDARD OF REVIEW

■ We review a trial court's decision regarding the adequacy of an expert report under an abuse of discretion standard. *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002). An abuse of discretion occurs when a trial court acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Id.*

## DR. GRAY'S QUALIFICATIONS

■ Leland argues that the report is inadequate because Dr. Gray is not a qualified expert. Leland contends that Dr. Gray is not qualified to provide expert testimony because he is an anesthesiologist and his curriculum vitae does not demonstrate his particular knowledge, training, or experience related to cardiology, neurology, surgery, or dentistry.

■ When considering a Section 74.351(*l*) motion, the issue for the trial court is whether the plaintiff's expert report constitutes a "good-faith effort" to comply with Section 74.351. *See id.* (stating the issue in a former Article 4590i, Section 13.01, motion). To constitute a good-faith effort, the report must (1) inform the defendant of the specific conduct called into question by the plaintiff's claims and (2) provide a basis from which the trial court may conclude the claims have merit. *Id.* The proponent of an expert report has the burden to show that the expert is qualified. *Broders v. Heise,* 924 S.W.2d 148, 151–52 (Tex.1996). The qualifications of an expert must appear in the report itself. *Olveda v. Sepulveda,* 141 S.W.3d 679, 683 (Tex.App.-San Antonio 2004, no pet.).

Expert means "with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care for a dentist, a dentist or physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (Vernon 2005). Rule 702 governs the admissibility of ex-

pert testimony. TEX.R. EVID. 702. Rule 702 requires an expert witness to be qualified by reason of knowledge, skill, experience, training, or education. *Id.; Olveda*, 141 S.W.3d at 681. Here, the relevant inquiry is whether Dr. Gray's expert report showed he was qualified to express an expert opinion with respect to proximate cause of the injuries alleged, namely, Brandal's ischemic stroke.

Dr. Gray has been licensed to practice medicine since 1966. He completed his anesthesiology residency at Wilford Hall USAF Medical Center in 1972 and received his board certification from the American Board of Anesthesiology in 1974. For the past 17 years, Dr. Gray has been an associate clinical professor of anesthesiology at the University of Texas Health Sciences Center in San Antonio, Texas. Recently, Dr. Gray began working as a staff anesthesiologist at Brooke Army Medical Center where he is responsible for patient care and instructing anesthesia residents.

Dr. Gray opines that "[i]t is more likely than not that the cerebral artery occlusion leading to the stroke was caused by the withdrawal of his medication." In his report, Dr. Gray states that the prevention of strokes and the withholding of preventive drugs is within the practice of medicine. As to his qualifications, Dr. Gray states in pertinent part:

> [a]nesthesiologists are frequently asked to care for patients similar to Mr. Brandal. In my years of practice of Anesthesiology I have taken part in the care of scores of patients like Mr. Brandal who are at risk for stroke or heart attacks and are taking these medicines. Many of them were having open heart operations with all of the problems of severe disease and bleeding. Thus I have had considerable work experience with these

drugs and have great respect for their potency.

> Based on my experience and the literature referenced above, it is my opinion that Mr. Brandal's clotting times had returned to their normal value at around the time of the surgery and certainly immediately before Mr. Brandal suffered the stroke.

Although Dr. Gray states that anesthesiologists are frequently asked to care for patients who are at risk for strokes and who are taking Plavix and aspirin, this does not provide sufficient detail from which the trial court could determine that Dr. Gray's experience sufficiently qualifies him to render an opinion as to proximate cause. Anesthesiologists may administer anesthesia to patients with a myriad of problems but that does not give them specialized knowledge of the causation of such ancillary problems. *See Olveda*, 141 S.W.3d at 682 (stating "[i]t is not enough, however, for [the purported expert] to state that all physicians should be able to diagnose" a particular illness). Further, the fact that Dr. Gray took part in the care of patients like Brandal, does not impart the necessary qualifications to state that the effect of the cessation of Plavix and aspirin during the time period in question proximately caused Brandal's stroke. *See* TEX.R. EVID. 702; *Broders*, 924 S.W.2d at 153 (stating Rule 702 requires that experts be qualified "by knowledge, skill, experience, training, or education," and that their testimony assist the trier of fact regarding the specific issue before the court). Under his report, Dr. Gray may be qualified to render an opinion that he is aware that cessation of these medications may cause a stroke. However, Dr. Gray's opinion goes further claiming the cessation was the cause of the injury to Brandal.

While some of the medical literature attached to Dr. Gray's report supports his

opinion—albeit other literature contradicts it—this does not establish that he has the qualifications to render this opinion. To the contrary, the conflict among the medical literature attached to Dr. Gray's report suggests that more than just general experience is required in order to render an opinion over the effect of withdrawing these medications during a specific time period. Additionally, the medical literature attached to Dr. Gray's report establishes, and both parties seem to agree, that the time period of cessation is a substantial factor in determining if Leland's actions proximately caused Brandal's injury. Dr. Gray fails to explain how his knowledge, skill, experience, training, or education qualified him to state that cessation of Plavix and aspirin during the time period in question proximately caused Brandal's ischemic stroke. *See Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex.2003) (stating the test for cause in fact, a component of proximate cause, is whether the act or omission was a substantial factor in causing the injury without which the harm would not have occurred). Therefore, we conclude that Dr. Gray's expert report is deficient in failing to establish that Dr. Gray has the knowledge, skill, experience, training, or education to opine that Leland's instructions to stop taking Plavix and aspirin resulted in Brandal's clotting times to return to their normal value, thus proximately causing Brandal's ischemic stroke.

### EXTENSION OF TIME

■ The Brandals, however, argue that if this court reverses the trial court's order it should then remand the cause to the trial court for a determination of whether they are entitled to a 30–day extension to correct any deficiencies. Leland asserts Section 74.351(c) of the Texas Civil Practice and Remedies Code only allows one extension to cure deficiencies if the inade-

quate report represents a good faith effort to comply with the statute. Further, Leland states that when a claimant files a report that omits one of the required elements, a purportedly mistaken belief that the report complied with the statute is not a mistake of law that would entitle a claimant to the discretionary grace period. Thus, Leland claims because the reports failed to meet the requirements of the statute, the trial court's order denying the motion to strike should be reversed and the Brandals' claims dismissed with prejudice. Essentially, the inquiry is whether the trial court has any discretion to grant a 30–day extension. We hold that it does.

If an expert report has not been timely served, Section 74.351(b) provides that upon the defendant's motion, the trial court shall award attorney fees and costs and dismiss the claim with prejudice. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (Vernon 2005). However, any relief a court grants under Subsection (b) is always subject to Subsection (c), which provides in part that the trial court may grant one 30–day extension to the claimant to cure a deficiency in an expert report. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(c) (Vernon 2005).

In support of his argument, Leland cites to cases addressing former Article 4590i, Section 13.01, now codified at Section 74.351. *See Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex.2003); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex.2001). Importantly, unlike the former statute, the Legislature omitted from Subsection (c) terms such as "good cause," "accident," or "mistake." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(c) (Vernon 2005). The Brandals provided a report addressing all of the statutory required elements; however, it was deficient because Dr. Gray's report failed to adequately articulate how he is qualified to

render an opinion on proximate cause. As such, we disagree with Leland that the trial court is without any discretion to allow a 30–day extension under Section 74.251(c). *See Walker*, 111 S.W.3d at 61 (stating the "failure to make the grace period available to parties who have timely filed inadequate reports would provide a perverse incentive by rewarding parties who do nothing and punishing those who attempt to comply with the statute but fail. We do not believe the Legislature intended such a result."); *Lo v. Higgs*, No. 09–05–00528–CV, 2006 WL 800823, at *3 (Tex.App.-Beaumont March 30, 2006, no pet. h.) (mem.op.) (holding the trial court erred in finding the report adequate as to the standard of care and proximate cause but nevertheless remanded for further proceedings, implicitly, to consider a 30–day extension).

## CONCLUSION

The trial court's order is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Concurring opinion by SARAH B. DUNCAN, Justice.

I reluctantly concur in the judgment and write separately to explain the reason for my reluctance.

Sections 74.351(a) through (c) provide as follows:

(a) In a health care liability claim, a claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider

against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties. Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived.

(b) If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), *the court,* on the motion of the affected physician or health care provider, *shall, subject to Subsection (c), enter an order that [dismisses the claim with prejudice and awards reasonable attorney's fees and court costs].*

(c) If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, *the court may grant one 30–day extension to the claimant in order to cure the deficiency.*[1] If the claimant does not receive notice of the court's ruling granting the extension until after the 120–day deadline has passed, then the 30–day extension shall run from the date the plaintiff first received the notice.

TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.351(a)-(c) (Vernon Supp.2006) (emphasis added).

As used in sections 74.351(b) and (c), "the court" plainly refers to the trial court. Accordingly, if a defendant files a motion to dismiss and for statutory sanctions, the trial court is put to a choice: (1) it may grant the motion to dismiss; or (2) it may find an element of the report deficient, grant a thirty-day extension to cure the

---

1. I note in passing that section 74.351(c) provides for a court-ordered extension without mentioning a motion, while section 74.351(b) authorizes a dismissal only upon motion.

deficiency, and thus delay ruling on the motion to dismiss until the expiration of the extension period. The second alternative was chosen by the trial court in *Methodist Health Care Sys. of San Antonio, Ltd. v. Rangel,* No. 04–05–00500, 2005 WL 3445994 (Tex.App.-San Antonio Dec. 14, 2005, pet. denied). *See id.* at *1 (stating that trial court ordered claimant to file amended report before denying motion to dismiss). On appeal, because the trial court granted an extension before erroneously denying the motion to dismiss, the order denying the motion to dismiss was "reversed, and the cause . . . remanded to the trial court with instructions . . . to award [the defendant] its reasonable attorney's fees and costs of court and to render judgment dismissing [the claimant's] claims . . . with prejudice." *Id.* at *5. But what if the trial court denies the motion to dismiss without first granting an extension, as occurred in this case? The majority reverses the trial court's order denying the motion to dismiss and remands the cause to the trial court to consider whether to grant a section 74.351(c) extension. But this course of action is simply not available under a literal interpretation of section 74.351(c).

Section 74.351(c) permits the *trial court,* if *it* finds the report deficient, to grant an extension; section 74.351(c) does not authorize the trial court to grant an extension if an *appellate court* finds the report deficient. Accordingly, there appears to a single entity—the trial court—that may grant an extension at a single moment in time—after it has found one or more elements of the report deficient. In short, as counterintuitive as it sounds, section 74.351(c) can be interpreted to provide that, while the trial court may grant an extension to cure a deficiency in an expert report if it finds the report deficient, it is not authorized to grant an extension if an appellate court holds the report deficient.

However, because I have found no authority to support this seemingly radical interpretation of the statute and ample authority to support the majority's remand, I concur in the judgment and implore the legislature to clarify this ambiguity at its earliest opportunity.