In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-300 CV


____________________



BILL AND LANA COMSTOCK, INDIVIDUALLY AND 


AS NEXT FRIENDS OF MEGAN RAE COMSTOCK, Appellants



V.



M. JAMES CLARK AND NORTHWEST ORAL 


& MAXILLOFACIAL SURGERY, P.C., Appellees






On Appeal from the 284th District Court


Montgomery County, Texas


Trial Cause No. 06-07-06852-CV






 MEMORANDUM OPINION


 In this healthcare liability claim, Bill and Lana Comstock, individually and on behalf
of their daughter, Megan Rae Comstock, (the "Comstocks"), appeal an order dismissing their
claims against M. James Clark, D.D.S. ("Clark") and Northwest Oral & Maxillofacial
Surgery, P.C. ("Northwest") (collectively referred to as "health care providers") on the
grounds that the Comstocks failed to produce a sufficient expert report. See Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(l) (Vernon Supp. 2006). We reverse and remand.


Background


 The Comstocks sued Clark, a dentist specializing in oral and maxillofacial surgery,
and Northwest, his alleged employer, and contended that they committed malpractice. The
Comstocks claimed that Megan suffered permanent brain damage because of an overdose of
sedation medication during a procedure to surgically extract her wisdom teeth. Specifically,
the Comstocks contend that the health care providers were negligent by overly sedating
Megan, causing her brain to be deprived of sufficient oxygen, and then failed to sufficiently
monitor her following the procedure. 

 The Comstocks served the health care providers with the expert reports of Dr. Roger
E. Alexander, a licensed dentist and a board-certified specialist in oral and maxillofacial
surgery, and Dr. Malcolm D. Orr, a board-certified anesthesiologist. The health care
providers moved to strike the experts' reports asserting that the reports failed to comply with
the statutory medical report requirements of Chapter 74 of the Civil Practice and Remedies
Code. See id. § 74.351(r). After holding a hearing, the trial court found the two experts'
reports inadequate, but granted the Comstocks a thirty-day extension to allow them to cure
the alleged deficiencies in their reports. See id. § 74.351(c).

 After the Comstocks served the health care providers with updated expert reports, the 
health care providers objected to the revised reports and again requested that the court
dismiss the Comstocks' claims. The health care providers argued to the trial court, and
maintain on appeal, that Dr. Orr is not qualified to render an opinion regarding Megan's
injuries, and that the expert reports were inadequate to explain how their alleged negligence
caused Megan's brain injury. See id. § 74.351(r)(6).

 After a hearing, the trial court sustained the health care providers' objections to the
Comstocks' revised expert reports and granted the health care providers' motion to dismiss. 
The Comstocks then filed this interlocutory appeal. See Tex. Civ. Prac. & Rem. Code Ann.
§ 51.014(a)(9) (Vernon Supp. 2006).

Standards Pertinent to Health Care Liability Expert Reports


 We review a trial court's decision regarding the adequacy of a health care liability
expert report under an abuse of discretion standard. Am. Transitional Care Ctrs. of Tex., Inc.
v. Palacios, 46 S.W.3d 873, 877-78 (Tex. 2001). A trial court abuses its discretion if it fails
to analyze or apply the law correctly. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992).

 A plaintiff asserting a health care liability claim must timely provide each defendant
health care provider with an expert report. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). 
The statute defines "expert report" as follows:

 a written report by an expert that provides a fair summary of the
expert's opinions as of the date of the report regarding
applicable standards of care, the manner in which the care
rendered by the physician or health care provider failed to meet
the standards, and the causal relationship between that failure
and the injury, harm, or damages claimed.

 

Id. § 74.351(r)(6). If a plaintiff timely furnishes the required report, the defendant may file
a motion challenging the report's adequacy. See id. § 74.351(l).

 The statute provides that the trial court "shall grant a motion challenging the adequacy
of an expert report only if it appears to the court, after hearing, that the report does not
represent an objective good faith effort to comply with the definition of an expert report in
Subsection (r)(6)." Id. When determining whether the report represents a good faith effort,
the trial court's inquiry is limited to the four corners of the report. Wright, 79 S.W.3d at 52;
Palacios, 46 S.W.3d at 878. To constitute a good faith effort, the report "must discuss the
standard of care, breach, and causation with sufficient specificity to inform the defendant of
the conduct the plaintiff has called into question and to provide a basis for the trial court to
conclude that the claims have merit." Palacios, 46 S.W.3d at 875.

 To be sufficient, the expert's report in a health care liability claim is not required to
marshal and present all of the plaintiff's proof; but the report cannot merely state the expert's
conclusions about the required elements. Wright, 79 S.W.3d at 52. Rather, the report must
explain the basis of the expert's statements to link his conclusions to the facts. Id. However,
because a plaintiff need not present a report that describes evidence as if he were actually
litigating the merits, the information in the report does not have to meet the same
requirements as evidence offered in a summary judgment proceeding or at trial. Palacios,
46 S.W.3d at 879. For example, the report is not required to express the causal relationship
in terms of reasonable medical probability or other "magic" words. Wright, 79 S.W.3d at 53. 

 With respect to opinion testimony on causation issues in health care claims against
dentists, the expert must be a dentist or physician, and "otherwise qualified to render
opinions on such causal relationship under the Texas Rules of Evidence." Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(r)(5)(D). Under the Texas Rules of Evidence, an expert must
have knowledge, skill, experience, training, or education regarding the specific issue before
the court that would qualify the expert to give an opinion on that particular subject. Broders
v. Heise, 924 S.W.2d 148, 153 (Tex. 1996); see also Tex. R. Evid. 702.

 In this case, the parties agree that Dr. Alexander did not discuss causation in his report
and focused solely on the issue of standards of care. Thus, the Comstocks only submitted
Dr. Orr's expert report to address causation. Here, and in the trial court, the health care
providers challenge Dr. Orr's qualifications and the adequacy of his report with respect to
providing them a fair summary of the causal relationship between the alleged negligence of
the health care providers and Megan's injury. 

Adequacy of Dr. Orr's Report


 The Comstocks contend that Dr. Orr was qualified to offer an expert opinion on the
causal relationship between Megan's injuries and the applicable standards of care. The
Comstocks point to Dr. Orr's extensive training and experience in the field of anesthesiology
and Dr. Orr's statement in his report that he has the ability to "manage the airway of patients
such as Megan Rae Comstock to conduct their anesthesia, titrate their level of sedation, guide
[their] emergence, assess their recovery and ability to breathe for themselves for the
automobile trip home where they are without any specialty trained healthcare provider." The
health care providers argue, on the other hand, that because Dr. Orr is not a neurologist,
neurosurgeon, or a specialist in brain disorders, he is not qualified to testify that Megan
sustained an injury.

 Not every physician automatically qualifies as an expert in every area of medicine. 
See Broders, 924 S.W.2d at 152. However, a physician need not be a practitioner in the same
specialty as the defendant to be a qualified expert in a particular case. See id. at 153; see also
Blan v. Ali, 7 S.W.3d 741, 745 (Tex. App.-Houston [14th Dist.] 1999, no pet.). Under the
Rules of Evidence, the test is whether the offering party has established that the expert has
knowledge, skill, experience, training, or education regarding the specific issue before the
court. See Tex. R. Evid. 702; Broders, 924 S.W.2d at 153; see also Roberts v. Williamson,
111 S.W.3d 113, 121 (Tex. 2003). The issue before us is whether Dr. Orr's report reflects
that he has the credentials and experience to provide an opinion that links deprivation of
oxygen to a brain injury. 

 Dr. Orr, a board-certified anesthesiologist for over thirty years, currently practices
medicine and is a tenured professor of anesthesiology with the University of Texas Health
Science Center in San Antonio, Texas. Since 1978, Dr. Orr has provided general anesthesia
for dental patients within the dental school of the University and within Audie Murphy
Veterans' Hospital, which is a teaching hospital for dental residents. He has been responsible
for staffing the dental school's operating rooms, and has directed the University's anesthesia
operations. Dr. Orr trains medical and dental students in anesthesiology and oral and
maxillofacial surgery and consults with other MD's, DO's, and oral and maxillofacial
surgeons. Additionally, according to Dr. Orr's report and curriculum vitae, he has extensive
training and experience with the standards of anesthesia management and recovery from
medications used in sedating patients. Moreover, he was one of the researchers in a multi-center study on one of the sedation reversal agents used during Megan's procedure.

 The health care providers characterize the specific issue before the trial court as the
diagnosis and treatment of Megan's alleged brain damage. However, Dr. Orr's report
focuses on Megan's overdose of sedation medication, her monitoring after the procedure, her
untimely discharge, and her resulting cerebral hypoxia. Dr. Orr's qualifications support his
expertise in the subjects on which he provided opinions in his report.

 The health care providers rely on Leland v. Brandal, 217 S.W.3d 60 (Tex. App.-San
Antonio 2006, pet. granted), for support of their contention that anesthesiologists, although
often qualified to render opinions on general causation, are not qualified to render an opinion
on specific causation on issues beyond their training and experience. In Brandal, the issue
concerned whether an anesthesiologist was qualified to testify that the cessation of a patient's
anticoagulant medication had caused his stroke. See id. at 62, 63. The Brandal court stated
that while anesthesiologists may administer anesthesia to patients with a myriad of problems,
that activity does not give them specialized knowledge concerning the causation of ancillary
problems. Id. at 63. However, in this case, Dr. Orr's opinion did not concern an ancillary
problem that required a showing of the type of specialized knowledge required by the court
in Brandal. The management of a patient's airway and the patient's recovery and ability to
breathe for himself are central to an anesthesiologist's responsibility. Here, Dr. Orr's
causation opinion is premised on the proposition that a significant deprivation of oxygen to
the brain causes brain damage, and that Megan, as a result of sedation, suffered from a
significant deprivation of oxygen. Because Dr. Orr's qualifications reflect that he is
educated, trained, and experienced in anesthesiology, he is qualified to express the general
opinion that a significant deprivation of oxygen causes brain injury. 

 We also conclude that Dr. Orr was qualified to express an opinion on specific
causation. Dr. Orr reviewed the clinical records from Megan's surgery. Megan's history
established that prior to the procedure she was in good health. After the procedure, Megan
required assistance in being placed in the car, and upon arriving at home was difficult to
arouse. Megan's history indicated that she "went from being an accomplished pianist and
equestrienne to one who is now challenged in these and in many other areas." Further, the
health care providers suggested no intervening cause to explain the change in Megan's
overall health. In the absence of another explanation, and given the temporal nature of the
change in Megan's health status, we conclude that Dr. Orr's report is adequate to
demonstrate that his qualifications were sufficient to allow him to associate the deprivation
of oxygen to Megan's brain as a probable cause of her symptoms that he attributed to a brain
injury.

 In addition to their contention that Dr. Orr is qualified to provide causation testimony,
the Comstocks also assert that Dr. Orr's report adequately identified the standard of care,
breaches of those standards, and the causation elements required of an expert report. The
health care providers do not contend that Dr. Orr failed to identify the applicable standards
of care and their breaches. After reviewing Dr. Orr's report, we find that it provides a fair
summary of the standards and the manner in which the health care providers failed to meet
those standards. Namely, Dr. Orr's report specifies the recommended dosage of sedation
medication for the type of procedure Megan underwent and then states that Megan received
150% of the maximum recommended dose for all patients. Next, Dr. Orr explains how the
reversal agents should have been administered as compared to the amount given to
Megan--the smallest reversal dose recommended--which resulted in Megan's re-narcotization. Dr. Orr also details the required monitoring necessary when administering
sedation medications and reversal agents, and how the health care providers failed to
properly monitor Megan. Last, Dr. Orr's report explains that Megan did not meet the criteria
to be discharged. 

 The health care providers maintain that Dr. Orr's causation testimony was "based
upon speculation, and [that] he did not link his conclusions to the facts of this case." 
Specifically, the health care providers argue that without reviewing the medical records of
Megan's postoperative hospital admission, Dr. Orr had no competent medical evidence of
any injury and thus, could not link Megan's injuries to the health care providers' breach of
the applicable standards of care.

 Dr. Orr's report stated he had reviewed Megan's clinical records from the procedure
at issue, and that he spoke with Megan's mother regarding the events surrounding the
procedure and her present condition. Dr. Orr's report included the chronological history of
the procedure, which included specifics regarding the sedation medication administered to
Megan that resulted in her being under deep sedation. Dr. Orr also detailed how the health
care providers should have monitored Megan after she was given reversal agents. 
Additionally, Dr. Orr's report discussed the events that took place after the surgery. Dr. Orr
notes that at her discharge, Megan was not alert and her speech was slurred. 

 Additionally, regarding the causal relationship between the health care providers'
failure to meet the standard of care and the injury claimed, Dr. Orr's report specifically
states:

 The health care provider placed the patient in the car in a semi-recumbent position where she had iatrogenic obstructive sleep
apnea. She was not returned to the recovery facility for enriched
oxygen to protect her during the 45 minute drive home. Dr.
Clark could have changed the outcome of events that day if he
had carried out the Dental Board Instructions. The injuries to
this patient were caused by cerebral hypoxia occasioned by the
obstructive sleep apnea. Prolonged deep sedation/general
anesthesia coupled with tongue obstruction caused the injury. 
These injuries were the result of untimely dismissal of the
patient without one to two hours of recovery time with oxygen
and careful respiratory coaching by the recovery room staff. 


Dr. Orr's report provides the link between the health care providers' breach (overdose of
sedation medication, failure to properly reverse deep sedation, failure to monitor properly,
untimely discharge, and the placement of Megan in the vehicle) and his conclusion on
causation that, if properly medicated or monitored, Megan would have avoided the
obstruction of her airway that resulted in hypoxia and brain injury. 

 We find that Dr. Orr's expert report provided a fair summary to reflect the bases of
his opinions. See generally Wright, 79 S.W.3d at 52; Palacios, 46 S.W.3d at 875. As we
previously explained, the temporal relationship of the procedure and the symptoms together
with the fact that no confounding intervening causes are suggested as factors lead us to
conclude that the information required by Chapter 74 of the Civil Practice and Remedies
Code is contained in Dr. Orr's report. (1) 

 Because Dr. Orr's report provided adequate opinions on the applicable standard of
care, breach, and causal relationship, we find that the report represents an objective good
faith effort to comply with the statutory requirements of a health care liability expert report. (2) 
See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6); see also Palacios, 46 S.W.3d at 875. 
We sustain the Comstocks' issue. Accordingly, the judgment of the trial court dismissing the
Comstocks' claim is reversed and the cause is remanded to the trial court for further
proceedings consistent with this opinion.

 REVERSED AND REMANDED.


 ____________________________

 HOLLIS HORTON

 Justice


Submitted on September 20, 2007

Opinion Delivered October 25, 2007

Before McKeithen, C.J., Gaultney and Horton, JJ.
1. We do not imply or suggest that an expert report's sufficiency for purposes of
Chapter 74 of the Texas Civil Practice and Remedies Code immunizes the report from a
challenge that it is not sufficiently reliable to be admitted before the trier of fact. That type
of challenge generally carries with it a more developed record than is before us here in this
preliminary proceeding.
2. The Comstocks concede that Dr. Alexander's expert report does not include causation
testimony. Rather, they urge that it addresses standards of care and breaches of those
standards committed by the health care providers. Because we find Dr. Orr's expert report
satisfies the statutory requirements of an expert report under Chapter 74 of the Texas Civil
Practice and Remedies Code, we need not address the adequacy of Dr. Alexander's report. 
See generally Tex. Civ. Prac. & Rem. Code Ann. § 74.351(i).