Affirmed and Majority and Concurring Opinions filed January 22, 2008








Affirmed and Majority and Concurring Opinions filed January 22, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00331-CV

_______________

 

WILLIAM DAVIS, Appellant

 

V.

 

JOHN Q. A. WEBB, JR., M.D., Appellee

                                                                                                                                               


On Appeal from the 215th District Court

 Harris County, Texas

Trial Court Cause No. 2006-64184

                                                                                                                                               


 

M A J O R I T Y   O P I N I O N

In this
medical malpractice case, we determine whether an optometrist may generate an
expert report concerning an ophthalmologist=s alleged departure from accepted
standards of medical care.  Because an ophthalmologist is a physician and an
optometrist is not, and only a physician is qualified to author an expert
report regarding whether a physician departed from accepted standards of
medical care, we affirm the trial court=s dismissal of this lawsuit.  We
further conclude that the trial court properly awarded appellee attorneys= fees and costs.  We therefore affirm
the judgment of the trial court.








I.  Factual and Procedural Background

On October 7, 2004, appellee John Q.
A. Webb, Jr., M.D., a physician specializing in ophthalmology, performed
surgery to remove a cataract from appellant William Davis=s left eye.  During the surgery,
fragments of lens nucleus were allegedly left in Davis=s eye due to a small capsular tear. 
Webb saw Davis shortly after the surgery for post-operative treatment, and it
is Webb=s post-operative treatment that Davis
claims fell below the acceptable standard of care.  According to Davis=s petition filed on October 6, 2006,
Webb failed to: (a) perform a one-day postoperative assessment, (b) document
Davis=s chief complaint, (c) assess all
structures of the eye, (d) perform a dilated fundus assessment, and (e) provide
a treatment and management plan.  He claims this alleged mistreatment caused

blurred vision, significant pain, and seeing rings for
weeks . . . .  Mr. Davis had to undergo numerous other surgeries, suffered from
cystoid macular edema in his operative eye, and will continue to suffer a
severe loss of visual acuity.  Mr. Davis is now at risk for developing
recurrent cystoid macular edema, chronic inflammation, glaucoma, decompensation
[of] which could require a corneal transplant, and retinal detachment.

 

Davis
timely served an expert report on February 2, 2007.[1] 
This report was authored








 by Anastis Pass, O.D.,
M.S., J.D., FAAO,who is a doctor of optometry, but not a physician.[2] 
On February 23, 2007, Webb filed a motion to dismiss alleging that Davis failed
to timely file an expert report because Pass does not meet the statutory
qualifications for an expert.[3]  Webb also
timely objected to the sufficiency of the report.[4] 
On March 27, 2007, the trial court granted the motion and subsequently rendered
final judgment on August 6, 2007, awarding attorneys= fees and costs to Webb.  This appeal
followed.

II.  Issues Presented

In his
first issue, Davis asserts that the trial court erred in dismissing his claim
because the report prepared by Pass is deficient but curable pursuant to
subsection 74.351(c) of the Texas Civil Practice and Remedies Code.  In his
second issue, Davis contends that, because the report was deficient rather than
untimely or non-existent, the award of fees and costs based on dismissal must
also be reversed.

III.  Analysis

A.        Standard
of Review








Chapter 74 of the Texas Civil
Practice and Remedies Code (the ACode@) requires a health care liability
claimant to serve providers with expert reports within 120 days of filing
suit.  Tex. Civ. Prac. & Rem. Code
Ann. ' 74.351(a).  If the claimant fails to timely serve a report, the trial
court must grant the provider=s motion to dismiss the claim, and the failure to do so is
subject to interlocutory appeal.  Id. '' 51.014(a)(9), 74.351(b) (Vernon
Supp. 2007).  If a report is timely served, but is deficient as to one or more
elements, the court may grant one 30-day extension to cure the deficiency.  Id.
' 74.351(c).  But the trial court must
grant a motion challenging the adequacy of an expert report if it appears to
the court, after hearing, that the report does not represent an objective
good-faith effort to comply with the requirements of an expert report as set
forth in section 74.351(r)(6).  Id. ' 74.351(l). 

Under subsection 74.351(r)(6), an Aexpert report@ is defined as:

a report by an expert that provides a fair summary of
the expert=s opinions as of the date of the report regarding
applicable standards of care, the manner in which the care rendered by the
physician or health care provider failed to meet the standards, and the causal
relationship between that failure and the injury, harm, or damages claimed.

 

Id. ' 74.351(r)(6).  In turn,Aexpert@ means, inter alia,:

with respect to a person giving opinion testimony
regarding whether a physician departed from accepted standards of
medical care, an expert qualified to testify under the requirements of Section
74.401;

 

with respect to a person giving opinion testimony regarding
whether a health care provider departed from accepted standards of
health care, an expert qualified to testify under the requirements of Section
74.402.

 

Id. ' 74.351(r)(5)(A), (B) (emphasis
added).  Under section 74.401, only a physician may qualify as an expert
regarding whether a physician departed from accepted standards of medical
care.  Id. ' 74.401(a).  According to section 74.402, in contrast, in a
suit involving a health care liability claim against a health care provider,
another health care provider may qualify as an expert witness on the issue of
whether the health care provider departed from accepted standards of care.  Id.
' 74.402(b).  Finally, under
subsection 74.351(r)(5)(C), only a physician may render opinions regarding
causation in an expert medical report.[5]  Id. ' 74.351(r)(5)(C).








We apply
an abuse-of-discretion standard in reviewing a trial court=s decision on a motion to dismiss in
which a defendant claims the expert opinion was untimely served.  Mokkala v.
Mead, 178 S.W.3d 66, 70 (Tex. App.CHouston [14th Dist.] 2005, pet.
denied). An abuse of discretion occurs when a trial court acts in an
unreasonable and arbitrary manner, or when it acts without reference to any
guiding principles.  Id.  We defer to the trial court=s factual determinations, but review
questions of law de novo.[6]  Id. 
Thus, to the extent resolution of the issue before the trial court requires
interpretation of the statute itself, we apply a de novo standard.  Id.

B.        The Expert Report

In his first issue, Davis contends
the trial court erred in dismissing his claims rather than granting a 30-day
extension to cure any deficiencies in his report.  In its order of dismissal,
the trial court noted as follows: 

The Court concludes that under the facts of this case
and the applicable law, no Aexpert report@ has been served.  Accordingly, the Court has no basis
to reach the plaintiff=s request for a 30-day extension to cure any
deficiency found in the proffered report.  In the event [the] reviewing
court(s) disagree with the conclusion that no Aexpert report@ has been served, this Court grants such extension
effective the date the reviewing court(s) issue a mandate to this court. 
Because this Court concludes that no Aexpert
report@ was served, the Court hereby dismisses plaintiff=s claims against defendant Webb with prejudice.

 








Davis asserts that the report filed
by Pass was merely a deficient report curable pursuant to subsection 74.351(c)
of the Code, rather than Ano expert report.@[7]  According to Davis, section 74.402
of the Code should apply when determining the statutory qualifications of an
expert in this case because Davis=s post-operative treatment, although
provided by a physician, could have been provided by an optometrist.  As noted
above, section 74.402 establishes the qualifications of an expert witness
testifying on the issue of whether a health care provider departed from
accepted standards of care.  Tex. Civ.
Prac. & Rem. Code Ann. ' 74.402 (Vernon 2005).  And Pass
meets the statutory definition of a health care provider.  See id. ' 74.001(a)(12)(vi) (defining an
optometrist as a Ahealth care provider@).  

Webb responds that, because he is a
physician, section 74.401 of the Code establishes the necessary qualifications
for an expert providing an expert report regarding the care rendered by a
physician.  As discussed supra, this section provides that only a physician
may qualify as an expert witness on the issue of whether a physician departed
from accepted standards of medical care.[8] 
Id. ' 74.401(a).  The term Aphysician@ is defined to include, as is relevant here, those
individuals licensed to practice medicine.  Id. ' 74.001(a)(23).  An optometrist, on
the other hand, is licensed to practice optometry rather than to practice
medicine.  See Tex. Occ. Code
Ann. ' 351.002(4), (6), (7), (9) (Vernon 2004).[9] 









Davis cites no cases in which an
expert report by a health care provider such as an optometrist concerning the
standard of care required of and allegedly breached by a physician has been
determined to constitute a good faith effort to comply with the statutory
scheme.  Instead, Davis relies on Leland v. Brandal, a case in which a
dentist was sued for malpractice and the plaintiff provided expert reports by
an anesthesiologist.  217 S.W.3d 60, 62 (Tex. App.CSan Antonio 2006, pet. granted).  The
dentist appealed the denial of his motion to strike the expert report.  Id. 
The Fourth Court of Appeals determined that the anesthesiologist had not
established that he was qualified to express an expert opinion regarding the
injuries alleged.  Id.  The court further concluded that a report had
been filed, but was deficient.  Id.  Thus, the trial court had
discretion to grant a 30-day extension under subsection 74.351(c).  The
appellate court reversed and remanded so that the trial court could consider
such an extension.  Id. 

Likewise, in Foster v. Zavala,
on which Davis also relies, a podiatrist appealed the trial court=s denial of his motion to dismiss. 
214 S.W.3d 106, 108B09 (Tex. App.CEastland 2006, pet. filed).  The expert report served by
Zavala was provided by a cardiovascular surgeon.  Id. at 109.  Because
Zavala=s expert was not practicing health
care in a field of practice that involved the same type of care or treatment as
the podiatrist, the Eleventh Court of Appeals reversed and remanded to permit
the trial court to consider whether to grant a 30-day extension under section
74.351(c).  Id. at 117.








These cases are readily
distinguishable from Davis=s suit.  First, a physician authored the expert reports in
each of these cases, which is specifically authorized by subsections
74.351(r)(5)(D) (dentist) and (E) (podiatrist).  See Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(r)(5)(D), (E) (Vernon
Supp. 2007).  But, as discussed above, Pass is not a physician.  Thus, he is
barred by statute from offering an expert opinion regarding medical causation
or the alleged breach of the standard of care applicable to a physician.  See
id. ' 74.351(r)(5)(A) and (C). 
Second, the trial courts in both Leland and Foster did not
dismiss the plaintiffs= lawsuits; instead, the defendants appealed the trial court=s denial of their motions to
dismiss.  Here, the trial court dismissed Davis=s case when it determined that no Aexpert report@ had been filed because, under the
statutes governing expert reports,  Pass is not qualified to offer an expert
opinion applicable to Webb.  And Davis has provided no support for his argument
that filing an expert report authored by an optometrist constitutes a good
faith effort to comply with the statutory requirements for an expert report in a
health care liability claim against a physician.  Moreover, as noted above,
even if Pass were qualified to render opinion testimony regarding the standard
of care, he still is not qualified to render opinion testimony about the causal
relationship between Webb=s alleged departure from the standard of care and Davis=s injuries because he is not a
physician.  See id. ' 74.351(r)(5)(C).








In sum, Davis has provided no
authority supporting his contention that  Pass meets the statutory requirements
for an expert in a medical malpractice claim against a physician.  See id.
' 74.401 (Vernon 2005).  Moreover,
nothing in section 74.351(c) indicates that a report authored by an individual
who is not statutorily qualified to offer an expert opinion is a deficient
report curable by a discretionary 30-day extension, rather than Ano expert report,@ as the trial court determined here. 
See Danos v. Rittger, C S.W.3d C, 2007 WL 625816, at *3B4 (Tex. App.CHouston [1st Dist.] March 1, 2007,
pet. filed); see also Chisholm v. Maron, 63 S.W.3d 903, 905 (Tex.
App.CAmarillo 2001, no pet.) (determining
that because expert was not qualified, no report was filed under the
predecessor statute);  Cuellar v. Warm Springs Rehab. Found., No.
04-06-00698-CV, 2007 WL 3355611, at *3 (Tex. App.CSan Antonio Nov. 14, 2007, no pet.
h.) (mem. op.) (concluding that reports authored by individuals not statutorily
qualified as experts constituted Ano report@ and did not constitute a Agood faith effort@ to comply with the statutory
requirements); De La Vergne v. Turner, No. 04-06-00722-CV, 2007 WL 
1608872, at *1 (Tex. App.CSan Antonio June 6, 2007, no pet.) (mem. op.) (reasoning that
because plaintiff could cure deficiency only by obtaining a new report from a
physician, trial court did not abuse its discretion in denying motion for grace
period); Methodist Health Ctr. v. Thomas, No. 14-07-00085-CV, 2007 WL
2367619, at *4 (Tex. App.CHouston [14th Dist.] Aug. 21, 2007, no pet.) (mem. op.)
(determining that plaintiffs could comply only with the statutory requirements
by filing a Awholly new report by a different expert@ and therefore a thirty-day extension
was not available). 

Under
these circumstances, we conclude the trial court was within its discretion to
dismiss the case.  Thus, we overrule Davis=s first issue.

D.        Award of Costs and
Attorneys= Fees

Under
subsection 74.351(b)(1), the trial court must enter an order awarding
reasonable attorneys= fees and costs of court when dismissing a case for failure
to timely serve the required expert report.  See Tex. Civ. Prac. & Rem. Code ' 74.351(b)(1).  Because dismissal of
Davis=s suit was appropriate, the award of
costs and fees was also proper.  See id. (stating that the court
shall enter an order awarding reasonable attorneys= fees and costs on motion of
defendant, subject to the trial court=s exercise of discretion to grant a
30-day extension under subsection (c)).  Accordingly, we overrule Davis=s second issue.

IV.  Conclusion

We conclude the trial court did not
abuse its discretion in holding that Davis failed to timely file the
statutorily required expert report.  Thus, we overrule Davis=s first issue.  Because the trial
court did not abuse its discretion in dismissing Davis=s lawsuit, its award 

 

 

 

 








of attorneys= fees and costs was appropriate.  We
therefore overrule Davis=s second issue and affirm the trial court=s judgment.

 

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Majority and Concurring Opinions
filed January 22, 2008.

Panel consists of Chief Justice Hedges, Justice
Guzman, and Justice Frank C. Price.* 









[1]  The version of section 74.351(a) applicable to this
suit required an expert report in a health care liability claim to be served
120 days from the date the claim was filed.  See Act of June 2, 2003,
78th Leg., R.S., ch. 204, '' 10.01,
10.09, 23.02(a), (d), 2003 Tex. Gen. Laws 847, 864, 875, 884, 898B99, amended by Act of May 18, 2005, 79th Leg.,
R.S., ch. 635, ' 1, 2005 Tex. Gen. Laws 1590, 1590 (current version at
Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(a) (Vernon Supp. 2007)).  The Legislature
later amended section 74.351(a) to require a claimant to serve an expert report
not later than the 120th day after the original petition is filed.  See Act
of May 18, 2005, 79th Leg., R.S., ch. 635, ' 1,
2005 Tex. Gen. Laws 1590, 1590 (current version at Tex. Civ. Prac. & Rem.Code Ann. ' 74.351(a) (Vernon Supp. 2007)).  That amendment,
however, does not apply to this lawsuit.  See Act of May 18, 2005, 79th
Leg. R.S., ch. 635, ' 2, 2005 Tex. Gen. Laws 1590, 1590 (providing
that 2005 amendment of section 74.351(a) applies only to causes of action that
accrued on or after amendment=s effective
date of September 1, 2005).  Thus, Davis was required to serve his expert
report(s), with curriculum vitae of each expert listed in the report(s), by
February 3, 2007.  For simplicity=s
sake, references to section 74.351(a) in the remainder of this opinion will be
to the version applicable to this lawsuit.





[2]  According to his curriculum vitae, Pass received his
doctoral degree in optometry from the Illinois College of Optometry, his master=s degree in physiological optics from the University
of Houston, and his juris doctorate from South Texas College of Law.  Pass is
also a Fellow of the American Academy of Optometry.





[3]  See Tex.
Civ. Prac. & Rem. Code Ann. '
74.351(b) (Vernon Supp. 2007).





[4]  See id. '
74.351(a).  





[5]  At oral argument, appellant=s attorney acknowledged that an entirely new report
authored by a physician would be necessary to address causation.





[6]  Our sister court has cited Mokkala for the
proposition that the standard of review under section 74.351 is abuse of
discretion even when an appeal involves an issue of statutory interpretation.  See
Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez, -S.W.3d-, 2007 WL
2963689, at *2 n.1 (Tex. App.CHouston [1st
Dist.] 2007, no pet. h.); Intracare Hosp. N. v. Campbell, 222 S.W.3d
790, 795 (Tex. App.CHouston [1st Dist.] 2007, no pet.).  But in Mokkala,
we specifically identified the de novo standard of review as appropriate when
resolving issues involving statutory interpretation, contrary to our sister
court=s interpretation of this case.  Mokkala, 178
S.W.3d at 70.





[7]  We note that a trial court is not required to permit
an extension when a report is deficient as to one or more elements;  the
statutory language leaves the determination of whether to permit an extension
to the trial court=s discretion.  See Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(c).  Although the trial court stated in its
dismissal order that it would have granted a 30-day extension had it found the
report merely deficient,  such language is mere surplusage and has no bearing
on whether the trial court abused its discretion in dismissing Davis=s suit.  See, e.g., Valley Mun. Util.
Dist. No. 2 v. Hild, 578 S.W.2d 827, 829 (Tex. Civ. App.CHouston [1st Dist.] 1979, no writ) (stating that
recitations in a dismissal order that do not constitute a judgment are mere
surplusage).





[8]  This section permits the trial court to accept an
expert report that departs from the criteria only if, Aunder the circumstances, the court determines that
there is a good reason to admit the expert=s
testimony.  The court shall state on the record the reason for admitting the
testimony if the court departs from the criteria.@  Id. ' 74.401(d) (Vernon 2005). 





[9]   Optometrists are regulated by the State Optometry
Board.  Id. '' 351.002 B
.608 (Vernon 2004 & Supp. 2007).  Regulations affecting optometrists are
included in Title 3, Health Professions, but under Subtitle F, AProfessions Related to Eyes and Vision.@  Id.  Physicians, however, are regulated in
Subtitle B of Title 3, APhysicians.@  Id.
'' 151.001 B
165.160.  Physicians are regulated by the State Board of Medical Examiners and
are licensed to practice medicine.  Id. '' 152.001, 155.001.   Indeed, section 155.001 explicitly states, AA person may not practice medicine in this state
unless the person holds a license issued under [Subtitle B].@  Id. '
155.001.





* 
Former Justice Frank C. Price sitting by assignment.