**Susan Kay CRAIG and Mid County Family Physicians Associates, L.L.P., Appellants**

v.

**Thomas DEARBONNE, Individually and as Wrongful Death Beneficiary of Betty Dearbonne, Deceased, Appellee.**

No. 09–07–587CV.

Court of Appeals of Texas, Beaumont.

Submitted April 10, 2008.

Decided June 26, 2008.

James R. Boston, Jr., Gary Sommer, Boston & Hughes, P.C., Houston, for appellants.

Jacqueline Ryall, Sheldon, Dunham & Edwardson, L.L.P., Beaumont, and Craig Lewis, The Lewis Law Firm, Houston, for appellee.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

In this healthcare liability claim brought by appellee Thomas Dearbonne, suing individually and as wrongful death beneficiary of Betty Dearbonne, appellants Susan Kay Craig, M.D. and Mid County Family Physicians Associates appeal the denial of their motion challenging the expert report. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(*l*) (Vernon Supp.2007). Appel-

lants raise a single issue for our consideration. We reverse and remand.

## BACKGROUND

In his petition, Dearbonne alleged that Betty was admitted to Mid–Jefferson Hospital on January 25, 2005, after visiting the emergency room with complaints of difficulty breathing, pleuritic pain, fever, and chills. According to Dearbonne's petition, Craig noted at that time that Betty had a several-week history of upper respiratory infection and shortness of breath, and she diagnosed Betty with right-sided pneumonia. The petition further alleged that Betty's condition continued to deteriorate after she was admitted to the hospital, and a cardiologist eventually diagnosed her with arterial occlusion and Acute Respiratory Distress Syndrome (ARDS). Betty died on February 2, 2005. Dearbonne's petition alleged that the appellants' negligence "was a proximate cause of the injuries and damages suffered by Betty Dearbonne and her resulting death[,]" and Dearbonne sought damages under the Texas Wrongful Death Act.

On March 8, 2007, Dearbonne filed an expert report by Lige B. Rushing, M.D. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (Vernon Supp.2007). Appellants filed a motion to dismiss, in which they argued that the report's statement of causation was conclusory. Appellants also challenged Rushing's qualifications. The trial court denied appellants' motion to dismiss, and appellants then filed this interlocutory appeal, in which they raise one issue for our consideration. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(9) (Vernon Supp.2007).

## THE ISSUE

In their sole issue on appeal, appellants argue that the trial court abused its discretion by denying their motion to dismiss because Dearbonne failed to produce an expert report that complied with the requirements of section 74.351 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351. Specifically, appellants argue, among other things, that Rushing's causation opinion that appropriate treatment would have prevented Betty's death was conclusory and lacked a factual basis, and that the expert report did not sufficiently describe "what different treatment Dr. Craig needed to provide to comply with the standard of care and prevent Mrs. Dearbonne's death[.]" Because they are dispositive and interrelated, we address these sub-parts of appellants' issue together.

## STANDARD OF REVIEW AND PERTINENT LAW

We review a trial court's decision regarding the adequacy of an expert report under an abuse of discretion standard. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 877 (Tex.2001). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex. 2002). A trial court also abuses its discretion if it fails to analyze or apply the law correctly. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992).

A plaintiff who asserts a healthcare liability claim must provide each defendant physician and healthcare provider with an expert report no later than the 120th day after filing suit. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). The statute defines "Expert report" as

a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider

failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6). If a plaintiff furnishes the required report within the time permitted, the defendant may file a motion challenging the report. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(*l* ).

 The statute provides that the trial court "shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." *Id.* When determining whether the report represents a good-faith effort, the trial court's inquiry is limited to the four corners of the report. *Wright,* 79 S.W.3d at 53; *Palacios,* 46 S.W.3d at 878; *Eichelberger v. Mulvehill,* 198 S.W.3d 487, 489–90 (Tex.App.-Dallas 2006, pet. denied). To constitute a good-faith effort, the report "must discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit." *Palacios,* 46 S.W.3d at 875. The expert report must set forth the applicable standard of care and explain the causal relationship between the defendant's acts and the injury. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a), (r)(6) (A claimant must provide each defendant with an expert report that sets forth the manner in which the care rendered failed to meet the standards of care and the causal relationship between that failure and the injuries claimed.); *Doades v. Syed,* 94 S.W.3d 664, 671–72 (Tex.App.-San Antonio 2002, no pet.); *Rittmer v. Garza,* 65 S.W.3d 718, 722–23 (Tex.App.-Houston [14th Dist.] 2001, no

pet.). Although an expert report need not marshal and present all of the plaintiff's proof, a report that omits any of the elements required by the statute does not constitute a good-faith effort. *Palacios,* 46 S.W.3d at 878–79.

APPLICATION OF THE LAW TO THE FACTS

In the report, Rushing stated as follows, in pertinent part:

Mrs. Dearbonne was admitted to the Mid–Jefferson Hospital on 01/25/05. In Dr. Craig's History & Physical, she lists respiratory distress/shortness of breath as one of her admitting diagnoses as well as pneumonia.

Mrs. Dearbonne received intravenous Levaquin and breathing treatments. She was seen initially at the time of admission by Dr. Susan Craig on 01/25/05. Dr. Craig saw her on two subsequent occasions on 01/27/05 and 01/28/05. During the course of her hospitalization, her condition deteriorated with the worsening of her pneumonia and the development of congestive heart failure as well as arterial thrombosis affecting both legs. She was transferred from Mid–Jefferson Hospital to Christus St. Mary's Hospital on 01/29/05 where she remained until her death on 02/02/05.

. . . .

As a result of my experience caring for patients in both the hospital and office setting, I have become familiar with the specific standards of care for a physician such [as] Dr. Susan Craig regarding the issues in this case and that [sic] are set forth below.

The standard of care for a physician such as Dr. Susan Craig requires that she provide that level of care and treatment that a reasonable prudent physician would provide under the same or similar circumstances. Additionally, the

standard of care in this case require[s] that Dr. Craig properly examine and evaluate and assess Mrs. Dearbonne's clinical condition on a daily basis and that she document those findings. The standard of care also requires that Dr. Craig provide appropriate treatment for the conditions and as the conditions evolve in Mrs. Dearbonne's case and adjust and/or provide additional treatment as indicated by Mrs. Dearbonne's clinical status on a daily basis. The standard of care also requires that appropriate consultation with additional specialist[s] be obtained when indicated.

. . . .

Dr. Craig's failure to ever examine Mrs. Dearbonne's lungs is below the standard of care. If Dr. Craig had examined Mrs. Dearbonne's lungs then more likely than not [s]he would have found evidence of worsening of the pneumonia/congestive heart failure. Dr. Craig should have ordered daily chest x-rays to assess Mrs. Dearbonne's clinical status regarding her congestive heart failure and pneumonia.

If this had been done, then the worsening of her congestive heart failure/pneumonia would have been detected as it worsened and could have been effectively treated more likely than not.

. . . .

Dr. Craig should have examined and assessed Mrs. Dearbonne on a daily basis at least. Dr. Craig failed to see Mrs. Dearbonne on 01/26/05. Given the seriousness of Mrs. Dearbonne's problems she needed daily assessment and examination. Dr. Craig's failure to see her on 01/26 to examine her and document the examination is below the standard of care. The harm/injury that resulted from the failure to examine her daily is that it resulted in the failure to diagnose/recognize the worsening of Mrs.

Dearbonne's pneumonia/congestive heart failure. If Mrs. Dearbonne had been properly examined and assessed on 01/26/05, 01/27/05, and 01/28/05 by Dr. Craig, her worsening congestive heart failure/pneumonia would have been recognized. Had this been done, Mrs. Dearbonne could have been effectively treated on 01/26/05, 01/27/05 and 01/28/05. Cardiac and pulmonary consultation should have been obtained to evaluate Mrs. Dearbonne, [but] this was not done. Mrs. Dearbonne obviously developed congestive heart failure between 01/25/05 and 01/28/05.

. . . .

If proper assessment and treatment had been performed by Dr. Craig on 01/26, 01/27, or 01/28 then more likely than not, Mrs. Dearbonne could have been successfully treated and would not have died when she did.

It is my opinion that Dr. Susan Craig's failures as outlined here proximately cause[d] Mrs. Dearbonne's death. Had it not been for these failures, Mrs. Dearbonne would not have died when she did. It is my opinion that the most likely sequence of events in this case based on reasonable medical probability is that Mrs. Dearbonne actually died from pneumonia, congestive heart failure, sepsis and adult respiratory distress syndrome.

■ Rushing's report explains that the standard of care required Craig to examine and assess Betty on a daily basis, and that daily chest x-rays should have been performed. In addition, the report states that if Craig had examined Betty's lungs, then "more likely than not" she would have found that Betty's pneumonia and congestive heart failure had worsened, and those conditions "could have been effectively treated more likely than not." The report also concludes that if Craig had performed

"proper assessment and treatment" on January 26, 27, or 28, "then more likely than not, Mrs. Dearbonne could have been successfully treated and would not have died when she did." Rushing further concludes in the report that Craig's negligence proximately caused Betty's death, and if Craig had not been negligent, Betty "would not have died when she did." However, these statements are conclusory, since they are not linked to the facts and do not explain precisely how Craig's alleged negligence caused Betty's death. *See Wright*, 79 S.W.3d at 52; *Nelson v. Ryburn*, 223 S.W.3d 453, 456 (Tex.App.-Amarillo 2006, no pet.) (Report stating that physician's failure to perform a proper pre-operative medical evaluation of patient proximately caused patient's death during surgery and anesthesia was conclusory because its conclusions were not linked to the facts of the case.). In addition, the report fails to explain what treatment would have been effective, but was not provided, or whether the treatment Craig provided would have been effective if it had been started earlier. *See Jones v. King*, 255 S.W.3d 156, 158, 159 (Tex.App.-San Antonio, 2008, pet. filed) (mem.op.) (In case involving alleged development of meningitis after implantation of morphine pump, the causation opinion in the expert report was speculative and conclusory because it did not explain how the delay caused the disease to worsen or become more difficult to treat, and the report failed to explain whether earlier treatment would have been effective.); *Hardy v. Marsh*, 170 S.W.3d 865, 869–70 (Tex.App.-Texarkana 2005, no pet.) (In case involving alleged failure to seek consultation with vascular surgeon, expert report stating that failure to seek such a consultation caused subsequent amputation of the pa-

tient's leg was inadequate because it did not specify what treatment would have been appropriate.); *Gonzales v. Graves*, No. 07–03–00268–CV, 2004 WL 510898, at*4–*5 (Tex.App.-Amarillo Mar.16, 2004, no pet.) (mem.op.) (Statement in report that physician's failure to diagnose pneumonia caused patient's death was insufficient because the expert report failed to state what the physician should have done to address the patient's complaints and failed to explain the link between the physician's negligence and the patient's death.).

## CONCLUSION

Rushing's causation opinion that appropriate treatment would have prevented Betty's death lacked a factual basis and was conclusory, and the expert report did not sufficiently describe what different treatment Craig should have provided to prevent Betty's death. Therefore, the report did not discuss causation with sufficient specificity to inform appellants of the conduct Dearbonne has called into question and to provide a basis for the trial court to conclude that Dearbonne's claims have merit. *See Palacios*, 46 S.W.3d at 875. We sustain issue one.[1] Accordingly, we reverse the trial court's judgment and remand the cause to the trial court to consider whether to grant Dearbonne a thirty-day extension of time *sua sponte* to cure the deficiencies in the expert report. *See Leland v. Brandal*, 257 S.W.3d 204, 207 (Tex., 2008).

REVERSED AND REMANDED.

DAVID GAULTNEY, Justice, dissenting.

Medical records indicate Dearbonne was treated for pneumonia with an oral antibiotic for twenty days and then admitted to

---

1. We need not address appellants' remaining arguments that are listed as sub-parts of issue one, as they would not result in greater relief. *See* Tex.R.App. P. 47.1.

the hospital. Her condition deteriorated rapidly in the hospital over four days. Plaintiff's complaint is that her treating doctor did not recognize the deterioration and obtain a consult or provide effective treatment, presumably through appropriate monitoring and a different antibiotic or course of medication. Plaintiff's expert says one failure was in not ordering daily x-rays, because these would have disclosed the deteriorating condition. While the report could be more detailed in outlining the failures and identifying what would have been effective treatment, I see no abuse by the trial court of its discretion.