ACCEPTED
13-15-00119-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
9/3/2015 4:41:11 PM
Dorian E. Ramirez
CLERK

CAUSE NO. 13-14-00700-CV
CONSOLIDATED WITH
CAUSE NO. 13-15-00119-CV

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
9/3/2015 4:41:11 PM
DORIAN E. RAMIREZ
Clerk

IN THE COURT OF APPEALS
FOR THE THIRTEENTH JUDICIAL DISTRICT
SITTING AT CORPUS CHRISTI - EDINBURG, TEXAS

---

HARLINGEN MEDICAL CENTER,
LIMITED PARTNERSHIP                                          APPELLANT

VS.

ROSA ANDRADE, AS NEXT FRIEND OF
MARY HELEN ANDRADE, A MINOR CHILD, ET AL          APPELLEES

---

**APPELLANT'S REPLY BRIEF**

---

ON APPEAL FROM CAUSE NO. 2014-DCL-1353-G
IN THE 404TH JUDICIAL DISTRICT COUNTY OF
CAMERON COUNTY, TEXAS

---

Scott Clark
Roger W. Hughes
Will Hughes
ADAMS & GRAHAM, L.L.P.
P. O. Drawer 1429
Harlingen, TX 78551-1429

**ORAL ARGUMENT
IS REQUESTED**

Attorneys for Appellant

# TABLE OF CONTENTS

Page:

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

SUMMARY OF THE REPLY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.     The inability of plaintiffs' experts to explain how or
why another surgeon and hospital would accept Andrade
is a hole in their causation argument, not a "new and
independent cause." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.     Even if this issue were a "new and independent cause,"
plaintiffs would still need to address it to establish causation. . . . . . . 3

    C.     This essential link in Andrade's causation argument
is based wholly on conclusory speculation. . . . . . . . . . . . . . . . . . . . 4

    D.     Caselaw demonstrates this kind of conclusory speculation
does not provide a sufficient opinion on causation. . . . . . . . . . . . . . 7

    E.     Andrade is not entitled to a second extension of time to cure
deficiencies in the expert reports. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

Page:

Cases:

*Austin Heart, 7175 P.A. v. Webb*, 228 S.W.3d 276
(Tex, App.–Austin 2007, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48 (Tex. 2002) . . . . . . . . . . . . . . . . . . 5

*Butters v. Noyola*, No. 13-07-00713-CV, 2008 Tex. App. LEXIS 7632
(Tex. App.–Corpus Christi 2008, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Columbia Rio Grande Healthcare v. Hawley*,
284 S.W.3d 851 (Tex. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3

*Cornejo v. Hilgers*, 446 S.W.3d 113 (Tex. App.–Houston
[1st Dist.] 2014, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*Craig v. Dearbonne*, 259 S.W.3d 308
(Tex. App.–Beaumont 2008, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Dallas Ry. & Terminal Co. v. Bailey*, 250 S.W.2d 379 (Tex. 1952) . . . . . . . . . . . . 3

*Dew v. Crown Derrick Erectors, Inc.*,
208 S.W.3d 448 (Tex. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Dillard v. Texas Elec. Coop.*, 157 S.W.3d 429 (Tex. 2005) . . . . . . . . . . . . . . . . . 2

*Fagadau v. Wenkstern*, 311 S.W.3d 132
(Tex. App.–Dallas 2010, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Farshita v. Tenet Healthsystem Hosps. Dallas, Inc.*, 224 S.W.3d 448
(Tex. App.–Fort Worth 2007, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Fung v. Fischer*, 365 S.W.3d 507
(Tex. App.–Austin 2012, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hardy v. Marsh*, 170 S.W.3d 865
(Tex. App.–Texarkana 2005, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Hollingsworth v. Springs*, 353 S.W.3d 506
(Tex. App.–Dallas 2011, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Baptist Hosps. of Southeast Tex.*, No. 09-06-118-CV,
2006 Tex. App. LEXIS 7659 (Tex. App.–Beaumont
August 31, 2006, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*In re Covenant Health Sys.*, 223 S.W.3d 423
(Tex. App.–Amarillo 2006, orig. proc.) . . . . . . . . . . . . . . . . . . . . . . . . 10

*Jelinek v. Casas*, 328 S.W.3d 526 (Tex. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 5

*Jones v. King*, 255 S.W.3d 156
(Tex. App.–San Antonio 2008, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Leland v. Brandal*, 217 S.W.3d 60 (Tex. App.–San Antonio 2006,
*affirmed*, 257 S.W.3d 204 (Tex. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*Rennaissance Surgical Centers - South Texas v. Jimenez*, No. 13-07-121-CV,
2008 Tex. App. LEXIS 6857 (Tex. App.–Corpus Christi
August 28, 2008, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Rio Grande Regional Hospital v. Ayala*, No. 13-11-00686-CV,
2012 Tex. App. LEXIS (Tex. App.–Corpus Christi
August 24, 2012, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Shenoy v. Jean*, No. 01-10-01116-CV, 2011 Tex. App. LEXIS
(Tex. App.–Houston [1st Dist.] 2011, pet. denied ) . . . . . . . . . . . . . . . . 4-6

*Villa v. Hargrove*, 110 S.W.3d 74
(Tex. App.–San Antonio 2003, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . 9

*Western Invs., Inc. v. Urena*, 162 S.W.3d 547 (Tex. 2005) . . . . . . . . . . . . . . . . 4

*Women's Clinic of South Texas v. Alonzo*, No. 13-10-00159-CV,
2011 Tex. App. LEXIS 2177 (Tex. App.–Corpus Christi
March 24, 2011, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

State Statutes:

TEX. CIV. PRAC. & REM. CODE ANN. §74.001(a)(13) . . . . . . . . . . . . . . . . . . . . . . . 3

TEX. CIV. PRAC. & REM. CODE ANN. §74.351(c) . . . . . . . . . . . . . . . . . . . . . . . . . . 10


Other Authorities:

1 J.D. LEE & BARRY A. LINDAHL, MODERN TORT LAW
      §4:7 at 4-14-4-15 (2d ed. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**SUMMARY OF THE REPLY**

Andrade's Brief spends an extraordinary amount of time talking about issues other than the central issue of the case: whether it was impermissibly speculative and conclusory for Andrade's experts to assume, without discussion or explanation, that a hospital and surgeon would have accepted Andrade for a transfer if only HMC had met the standard of care in its efforts to accomplish a transfer. Despite submitting a 54 page brief with a word count over 10,000, Andrade never addresses whether that assumption was justified in the expert reports.

Instead, Andrade posits that this is really an issue of "new and independent cause" which need not be addressed at the expert report juncture. But when Plaintiffs' causation argument depends on a qualified hospital and surgeon accepting Andrade as a transfer patient, it is not asking too much to expect them to explain how or why any qualified hospital and surgeon would have accepted the transfer, especially when it is undisputed that multiple qualified hospitals refused.

**A.    The inability of plaintiffs' experts to explain how or why another surgeon and hospital would accept Andrade is a hole in their causation argument, not a "new and independent cause."**

Andrade contends the expert reports did not have to explain how better transfer efforts would have resulted in a successful transfer because that issue is a "new and independent cause." However, if an act is reasonably foreseeable at the time of the defendant's alleged negligence, the act is not a new and independent cause. *Columbia*

1

*Rio Grande Healthcare v. Hawley*, 284 S.W.3d 851, 857 (Tex. 2009). As acknowledged by Andrade's expert, Dr. Adams, Dr. Lopez foresaw early on that efforts to transfer Andrade would be difficult, saying "no one would accept him because he's unfunded." I C.R. 48.

A new and independent cause is also something that "operates entirely independently of the defendant's negligent act or omission." *Hawley*, 284 S.W.3d at 857. A new and independent cause should be something that alters the natural sequence of events and produces results that would not otherwise have occurred. *Dew v. Crown Derrick Erectors, Inc.*, 208 S.W.3d 448, 451 (Tex. 2006); *citing* 1 J.D. LEE & BARRY A. LINDAHL, MODERN TORT LAW §4:7 at 4-14-4-15 (2d ed. 2002). Put simply, a new and independent cause instruction is appropriate if the occurrence is caused "by someone else later." *Dillard v. Texas Elec. Coop.*, 157 S.W.3d 429, 432 (Tex. 2005).

Andrade's theory is that a hospital and surgeon willing to accept Andrade would have been found, if only HMC had done a better job trying to transfer him. Therefore, the existence of a hospital and surgeon willing to accept Andrade is an integral part of plaintiffs' own theory, not something that "operates entirely independently of the defendant's negligent act or omission." 284 S.W.3d at 857. The possibility that there would be no hospital and surgeon willing to accept Andrade was foreseen from the outset. I C.R. 48. Whether or not such a hospital and surgeon were

2

available does not involve actions by "someone else later," but is an essential part of the transfer at the heart of Andrade's case against HMC. While Andrade is correct that his expert reports need not anticipate and rebut all possible defensive theories, the unavailability of an accepting transfer hospital and surgeon is not a defensive theory, it is a missing link in Andrade's own case.

**B.** **Even if this issue were a "new and independent cause," plaintiffs would still need to address it to establish causation**.

New and independent cause is a component of the proximate cause issue. *Columbia Rio Grande Healthcare v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009). The theory of new and independent cause is not an affirmative defense; it is but an element to be considered in determining the existence or non-existence of proximate cause. *Id.*; *quoting Dallas Ry. & Terminal Co. v. Bailey*, 250 S.W.2d 379, 383-84 (Tex. 1952). The existence of proximate cause is an essential element of any health care liability claim. *See* TEX. CIV. PRAC. & REM. CODE §74.001(a)(13) (defining "health care liability claim" as "a cause of action . . . for . . . departure from accepted standards . . . which **proximately** results in injury or death of a claimant") (emphasis added).

While this Court held in *Rio Grande Regional Hospital v. Ayala*, No. 13-11-00686-CV, 2012 Tex. App. LEXIS at \*53-54 (Tex. App.–Corpus Christi August 24, 2012, pet. denied) that an expert report need not establish the foreseeability element of proximate cause, the opinion did not deny that the expert report must establish the

3

other element of proximate cause, namely, "cause in fact" or "substantial factor." *Id.* at *53. The expert report must establish cause in fact, that is, the expert report must demonstrate the act or omission was a substantial factor in causing the injury, without which the harm would not have occurred. *Cornejo v. Hilgers*, 446 S.W.3d 113, 123 (Tex. App.–Houston [1st Dist.] 2014, pet. denied); *Shenoy v. Jean*, No. 01-10-01116-CV, 2011 Tex. App. LEXIS 10212 at *23; (Tex. App.–Houston [1st Dist.] 2011, pet. denied) (mem. op.), *citing Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005); *In re Baptist Hosps. of Southeast Tex.*, No. 09-06-118-CV, 2006 Tex. App. LEXIS 7659 at *12 (Tex. App.–Beaumont August 31, 2006, no pet.) (mem. op.); *see also Leland v. Brandal*, 217 S.W.3d 60, 64 (Tex. App.–San Antonio 2006, *affirmed*, 257 S.W.3d 204 (Tex. 2008) (citing "cause in fact" standard in holding expert report failed to establish expert was qualified to give causation opinion).[1]  This "cause in fact" or "substantial factor" element is absent in Andrade's expert reports.

## C.  This essential link in Andrade's causation argument is based wholly on conclusory speculation.

Andrade attempts to take shelter in authorities holding all that is required at the expert report stage is a "good faith effort" to provide a "fair summary" of the experts' opinions.  However, speculation and unsupported conclusions do not suffice.  The requirement that an expert's opinion must not be conclusory applies not only to trial

---

[1] Andrade's brief acknowledges that the expert report must demonstrate the alleged "negligent act or omission constituted a substantial factor in bringing about the harm and absent the act or omissions, the harm would not have occurred."  Andrade's Brief at p. 29, *citing Cornejo*, 446 S.W.3d at 123.

testimony, but also to expert reports required by chapter 74. *Shenoy*, 2011 Tex. App. LEXIS 10212 at \*16; *citing Jelinek v. Casas*, 328 S.W.3d 526, 536 (Tex. 2010); *and Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002). The expert report must contain sufficiently specific information to demonstrate causation beyond the point of conjecture. *Fagadau v. Wenkstern*, 311 S.W.3d 132, 138 (Tex. App.–Dallas 2010, no pet.); *Butters v. Noyola*, No. 13-07-00713-CV, 2008 Tex. App. LEXIS 7632 at \*9 (Tex. App.–Corpus Christi 2008, no pet.) (mem. op.); *Farshita v. Tenet Healthsystem Hosps. Dallas, Inc.*, 224 S.W.3d 448, 453 (Tex. App.–Fort Worth 2007, no pet.).

The expert must explain the basis of his statements to link his conclusions to the facts. *Bowie Mem'l Hosp*, 79 S.W.3d at 52; *Jones v. King*, 255 S.W.3d 156, 159 (Tex. App.–San Antonio 2008, no pet.). A court may not fill in gaps in a report by drawing inferences or guessing what the expert meant or intended. *Fung v. Fischer*, 365 S.W.3d 507, 530 (Tex. App.–Austin 2012, no pet.); *Austin Heart, 7175 P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex, App.–Austin 2007, no pet.). Instead, the report must contain the required information within its four corners. *Bowie Mem'l Hosp.*, 79 S.W.3d at 53.

Andrade quotes this passage regarding the causation issue from Dr. Adams's report:

> [I]f the case management staff had not breached the applicable standard of care on December 19th, 20th, 21st, and 22nd, Mr. Andrade's condition would not have led to a subsequent ruptured aorta and death. It is further my opinion that their negligence in delay of diagnosis and substandard care as outlined above was a proximate cause of his progressive deterioration, free aortic rupture, and death. Andrade's Brief

5

at pp. 32-33; I C.R. 242.

Not stated in this passage, but implied elsewhere in Dr. Adams's report, is Dr. Adams's belief that "Mr. Andrade's condition would not have led to a subsequent ruptured aorta and death" because a qualified hospital would have accepted him as a transfer patient and a qualified surgeon at that other hospital would have surgically repaired Andrade's aorta before it ruptured. But cause in fact requires proof that Andrade would have survived but for the alleged negligence of HMC. *Cornejo*, 446 S.W.3d at 123; *Shenoy*, 2011 Tex. App. LEXIS 10212 at \*23; *Baptist Hosps.*, 2006 Tex. App. LEXIS 7659 at \*12; *Leland*, 217 S.W.3d at 64. That could only have happened if there was a transfer to a qualified hospital with a qualified surgeon. If such proof is not required, then HMC becomes liable without evidence that the transfer would have ever been accepted. This would effectively make any rural hospital strictly liable when a hospital in a major metropolitan area declines to accept a transfer patient.

Andrade notes that Dr. Debehnke faulted HMC for "failing to complete two separate transfer orders." I C.R. 265. But, just as a football quarterback cannot complete a pass if there is not a receiver to catch it, HMC cannot complete a transfer order with no hospital and surgeon willing to accept the transfer patient.[2]

---

[2] This situation brings to mind the scene after Super Bowl XLVI, where dropped passes by New England Patriots receivers were a significant factor in the Patriots losing the game to the New York Giants. After the game Gisele Bundchen, the wife of Patriots quarterback Tom Brady, was being taunted by Giants fans, until she retorted "My husband cannot f------ throw the ball and catch the ball at the same time." Joyce Chen & Janon Fisher, *Super Bowl 2012: Gisele*

Andrade's Brief says emphasizing the emergency nature of Andrade's condition and providing better information to prospective transferee facilities "would have made a difference," but the Brief does not cite to any part of the expert reports for this proposition. In fact, the expert reports do *not* claim or explain how emphasizing the urgency of Andrade's situation or providing better information "would have made a difference" for the transfer, let alone claim or explain how providing better information would have led to a successful transfer. None of the reports claim that any hospital had a duty to accept Andrade as an emergency patient, or would have accepted Andrade had they been given certain information. They provide no proof, nor do they even explicitly assert, that any hospital and surgeon would have accepted Andrade as a charity patient. The expert reports identify alleged breaches of the standard of care, and then make the leap to saying surgery at another hospital may have saved Andrade's life. They never connect the dots to explain how better transfer efforts would have resulted in another hospital accepting Andrade.

**D.    Caselaw demonstrates this kind of conclusory speculation does not provide a sufficient opinion on causation.**

In *Hardy v. Marsh*, 170 S.W.3d 865, 870 (Tex. App.–Texarkana 2005, no pet.), a patient complained of leg pain after heart surgery and eventually the leg had to be

---

*Bundchen defends husband Tom Brady, slams Patriots receivers*, N.Y. Daily News, February 6, 2012, *available at* http://www.nydailynews.com/news/super-bowl-2012-gisele-bundchen-comforts-husband-tom-brady-slams-patriots-receivers-article-1.1017852

Similarly, HMC cannot accomplish both ends of a patient transfer by itself. If there is no hospital and surgeon who will accept the transfer, the transfer cannot be completed.

amputated. Regarding causation, plaintiff's expert report said the patient "should have had a consultation with a vascular surgeon" and the expert believed "if this patient had had more immediate treatment that a salvage of his right leg would have been more probable." *Id*. at 868. The appellate court faulted the report because it "does not state what additional procedures or treatment would have been provided by the surgeon," and, therefore, was speculative on the element of causation. *Id*. at 870. Just like the report in *Hardy* failed to explain how a referral to a vascular surgeon would have saved the patient's leg, the expert reports in our case fail to explain how anything HMC could have done would have resulted in a successful transfer.

In *Craig v. Dearbonne*, 259 S.W.3d 308 (Tex. App.–Beaumont 2008, no pet.) the expert report faulted the attending physician for failing to properly examine and assess the patient over a span of three days, commenting that if the patient had been properly examined and assessed on those days, "her worsening congestive heart failure and pneumonia would have been recognized." *Id*. at 312. "Had this been done," the report says, the patient "could have been successfully treated and would not have died when she did." *Id*. The appellate court held this report was conclusory on causation because the report "fails to explain what treatment would have been effective, but was not provided, or whether the treatment provided would have been effective if it had been started earlier." *Id*. at 313.

In much the same way, Andrade's expert reports point to omissions in HMC's

8

transfer efforts, and say, had better efforts been made, surgery would have been performed at another hospital and Andrade may have survived. But appellees' reports do not explain how other transfer efforts that were not undertaken could have been successful, nor how the efforts that were undertaken could have been effective if they had been started earlier. *See also Villa v. Hargrove*, 110 S.W.3d 74, 79 (Tex. App.–San Antonio 2003, pet. denied) (opinion that patient should have been "urgently transported to the nearest hospital" and would be alive if defendants had done so was inadequate on causation); *see also Hollingsworth v. Springs*, 353 S.W.3d 506, 518-19 (Tex. App.–Dallas 2011, no pet.) (report considered conclusory in its attempt to connect negligence by nurse administrators to patient's injury where the report faults nurses for "failure to ensure communication among the health care providers" but "does not adequately explain why there would have been a different and better result if the hospital's management personnel had met their responsibilities").

**E.  Andrade is not entitled to a second extension of time to cure deficiencies in the expert reports.**

Andrade argues HMC is "incorrect" when HMC argues Andrade cannot get a second extension of time because Andrade was "on notice of all potential deficiencies in the expert report and acted at her own risk in failing to remedy those alleged deficiencies." Andrade's Brief, p. 51. But this language is not just the argument of counsel, this language is a direct quote from this Court. In *Women's Clinic of South Texas v. Alonzo*, No. 13-10-00159-CV, 2011 Tex. App. LEXIS 2177 (Tex.

9

App.–Corpus Christi March 24, 2011, pet. denied) (mem. op.) this Court said:

> in its objections and motion to dismiss, the Clinic specified the other alleged deficiencies in the report, namely that the expert report failed to set out the required standard of care, breach, and causation elements and that Dr. Thompson's qualifications to author an expert report as to the Clinic were not established. Thus, Alonzo was **on notice of the potential deficiencies in her report and acted at her own risk in failing to remedy those alleged deficiencies** by serving an amended report within the thirty-day extension period granted by the trial court. For these reasons, we conclude that the trial court was without authority to withdraw its November 5, 2009 order because Alonzo already availed herself of the one-time thirty-day extension available to her under section 74.351. She is not entitled to another. *Id*. at \*9 (emphasis added).

Andrade also argues that "plaintiffs have never been on notice of any deficiencies in their opinions concerning causation," but those deficiencies were raised in HMC's Motion to Dismiss. I C.R. 104, 107, 108, 112.

Andrade also cites *Rennaissance Surgical Centers - South Texas v. Jimenez*, No. 13-07-121-CV, 2008 Tex. App. LEXIS 6857 (Tex. App.–Corpus Christi August 28, 2008, no pet.) (mem. op.), but the extension authorized in that case was the first extension the plaintiff had received. *See id.* at \*30 (because the trial court found the reports sufficient in all respects, it had no reason to consider whether to grant an extension). The statute is clear that one thirty day extension is permitted. TEX. CIV. PRAC. & REM. CODE ANN. §74.351(c) (Vernon Supp. 2014). Caselaw, including a case from this court, has expressly held that, if expert reports are still deficient after an extension has been granted, the remedy is dismissal. *Alonzo*, 2011 Tex. App. LEXIS at \*8-9; *In re Covenant Health Sys.*, 223 S.W.3d 423, 427 (Tex.

10

App.–Amarillo 2006, orig. proc.).

## CONCLUSION

The issue in this case differs from the more typical issue of whether the report explains how a particular medical procedure could have saved the patient's life. HMC does not dispute that Andrade's experts identify what treatment they believe would have been provided if an accepting hospital and surgeon could have been found for Mr. Andrade (*i.e.*, emergency surgical repair of Andrade's ascending aortic dissection), nor does HMC dispute that the reports explain why the experts believe that treatment may have saved Andrade's life. But the reports do not explain how better efforts to transfer Andrade would have resulted in a successful transfer. What the reports leave unexplained is not whether the ultimate surgery could have been successful, but whether better transfer efforts more likely than not would have been successful at getting Andrade to another hospital and surgeon willing and able to provide that surgery. It does no good to say surgery may have saved Andrade if there was no one who would accept him as a patient to perform this surgery. This is not an extraneous counter-argument that can be set aside until later in the case, this is a central component of Andrade's own theory. This component of Andrade's case is not addressed in the expert reports.

To impose liability on HMC without evidence that a qualified facility and surgeon would have accepted Andrade with his lack of financial resources effectively

11

imposes strict liability on HMC.  This is a particular problem for hospitals in smaller, less wealthy communities which serve large numbers of uninsured patients but may not have all the resources of hospitals in large cities.  HMC met its obligation to admit Andrade and provide the care that could be provided by it and its staff of physicians. Because no other hospital would accept the patient without financial resources, HMC is left "holding the bag" on liability for Andrade's death.  With no evidence that any other hospital would accept Andrade as a transfer patient, there is an incurable gap in the causation opinions of Andrade's experts. The case against HMC warrants dismissal.

WHEREFORE, Appellant Harlingen Medical Center prays that this Court issue an opinion holding that appellees' expert reports were insufficient as to causation and that appellees have already received the one thirty-day extension authorized by statute, that this case be remanded to the trial court with instructions to dismiss the claims against Harlingen Medical Center with prejudice to refiling, and for all other relief to which it is entitled.

Respectfully submitted,

**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, Texas 78551-1429
(956) 428-7495
(956) 428-2954 (Fax)

By: /s/ *Scott T. Clark*  
       SCOTT T. CLARK  
       State Bar No. 00795896  
       sclark@adamsgraham.com  
       ROGER W. HUGHES  
       State Bar No. 10229500  
       rhughes@adamsgraham.com  
       WILL HUGHES  
       State Bar No. 10240100  
       willhughes@adamsgraham.com  

Attorneys for Appellant/Defendant HARLINGEN MEDICAL CENTER, LIMITED PARTNERSHIP

13

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. P. 9(j)(3), the undersigned certifies this Appellant's Reply Brief complies with the type-volume limitations of Tex. R. App. P. 9(j)(2)(B).

Exclusive of the exempted portions in Tex. R. App. P. 9(j)(1), Appellant's Reply Brief contains _3,200_ words. Appellant's Reply Brief has been prepared in proportionally spaced typeface using:

Software Name and Version: _WordPerfect X5 for Windows_

in (Typeface Name and Font Size): _New Times Roman 14 point_ .

ADAMS & GRAHAM, L.L.P.
P. O. Drawer 1429
Harlingen, TX 78551-1429t
956/428-7495; FAX: 956/428-2954
sclark@adamsgraham.com

By: _/s/ Scott T. Clark_
        SCOTT T. CLARK
        State Bar No. 00795896

Attorney for Appellant

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document was forwarded on this 3rd day of September, 2015, to the following counsel of record:

Attorneys for *Appellees* ROSA ANDRADE, ANF OF MARY HELEN ANDRADE, ET AL.:

F. Leighton Durham, III                                                 *Via e-service*
**KELLY, DURHAM & PITTARD, L.L.P.**
P.O. Box 224626
Dallas, Texas 75222

Ms. Laura E. Gutierrez Tamez                                     *Via e-service*
**THE HERRERA LAW FIRM, INC.**
111 Soledad Street, Suite 1900
San Antonio, TX 78205-2240


/s/    *Scott T. Clark*
SCOTT T. CLARK