William DAVIS, Appellant,

v.

John Q.A. WEBB, Jr., M.D., Appellee.

No. 14-07-00331-CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 22, 2008.

Rehearing Overruled Feb. 21, 2008.

---

Jason Bradley Ostrom, Houston, for appellant.

T. Marc Calvert, Houston, for appellant.

Panel consists of Chief Justice HEDGES, Justice GUZMAN, and Justice FRANK C. PRICE.*

## MAJORITY OPINION

EVA M. GUZMAN, Justice.

In this medical malpractice case, we determine whether an optometrist may generate an expert report concerning an ophthalmologist's alleged departure from accepted standards of medical care. Be-

---

* Former Justice Frank C. Price sitting by assignment.

cause an ophthalmologist is a physician and an optometrist is not, and only a physician is qualified to author an expert report regarding whether a physician departed from accepted standards of medical care, we affirm the trial court's dismissal of this lawsuit. We further conclude that the trial court properly awarded appellee attorneys' fees and costs. We therefore affirm the judgment of the trial court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 7, 2004, appellee John Q.A. Webb, Jr., M.D., a physician specializing in ophthalmology, performed surgery to remove a cataract from appellant William Davis's left eye. During the surgery, fragments of lens nucleus were allegedly left in Davis's eye due to a small capsular tear. Webb saw Davis shortly after the surgery for post-operative treatment, and it is Webb's post-operative treatment that Davis claims fell below the acceptable standard of care. According to Davis's petition filed on October 6, 2006, Webb failed to: (a) perform a one-day postoperative assessment, (b) document Davis's chief complaint, (c) assess all structures of the eye, (d) perform a dilated fundus assessment, and (e) provide a treatment and management plan. He claims this alleged mistreatment caused

blurred vision, significant pain, and seeing rings for weeks.... Mr. Davis had to undergo numerous other surgeries, suffered from cystoid macular edema in his operative eye, and will continue to suffer a severe loss of visual acuity. Mr. Davis is now at risk for developing recurrent cystoid macular edema, chronic inflammation, glaucoma, decompensation [of] which could require a corneal transplant, and retinal detachment.

Davis timely served an expert report on February 2, 2007.[1] This report was authored by Anastis Pass, O.D., M.S., J.D., FAAO, who is a doctor of optometry, but not a physician.[2] On February 23, 2007, Webb filed a motion to dismiss alleging that Davis failed to timely file an expert report because Pass does not meet the statutory qualifications for an expert.[3] Webb also timely objected to the sufficiency of the report.[4] On March 27, 2007, the

---

1. The version of section 74.351(a) applicable to this suit required an expert report in a health care liability claim to be served 120 days from the date the claim was filed. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01, 10.09, 23.02(a), (d), 2003 Tex. Gen. Laws 847, 864, 875, 884, 898–99, *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2007)). The Legislature later amended section 74.351(a) to require a claimant to serve an expert report not later than the 120th day after the original petition is filed. *See* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2007)). That amendment, however, does not apply to this lawsuit. *See* Act of May 18, 2005, 79th Leg. R.S., ch. 635, § 2, 2005 Tex. Gen. Laws 1590, 1590 (providing that 2005 amendment of section 74.351(a) applies only to causes of action that accrued on or after amendment's effective date of September 1, 2005). Thus, Davis was required to serve his expert report(s), with curriculum vitae of each expert listed in the report(s), by February 3, 2007. For simplicity's sake, references to section 74.351(a) in the remainder of this opinion will be to the version applicable to this lawsuit.

2. According to his curriculum vitae, Pass received his doctoral degree in optometry from the Illinois College of Optometry, his master's degree in physiological optics from the University of Houston, and his juris doctorate from South Texas College of Law. Pass is also a Fellow of the American Academy of Optometry.

3. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b) (Vernon Supp.2007).

4. *See id.* § 74.351(a).

trial court granted the motion and subsequently rendered final judgment on August 6, 2007, awarding attorneys' fees and costs to Webb. This appeal followed.

## II. ISSUES PRESENTED

In his first issue, Davis asserts that the trial court erred in dismissing his claim because the report prepared by Pass is deficient but curable pursuant to subsection 74.351(c) of the Texas Civil Practice and Remedies Code. In his second issue, Davis contends that, because the report was deficient rather than untimely or nonexistent, the award of fees and costs based on dismissal must also be reversed.

## III. ANALYSIS

### A. Standard of Review

Chapter 74 of the Texas Civil Practice and Remedies Code (the "Code") requires a health care liability claimant to serve providers with expert reports within 120 days of filing suit. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). If the claimant fails to timely serve a report, the trial court must grant the provider's motion to dismiss the claim, and the failure to do so is subject to interlocutory appeal. *Id.* §§ 51.014(a)(9), 74.351(b) (Vernon Supp. 2007). If a report is timely served, but is deficient as to one or more elements, the court may grant one 30–day extension to cure the deficiency. *Id.* § 74.351(c). But the trial court must grant a motion challenging the adequacy of an expert report if it appears to the court, after hearing, that the report does not represent an objective good-faith effort to comply with the requirements of an expert report as set forth in section 74.351(r)(6). *Id.* § 74.351(*l*).

Under subsection 74.351(r)(6), an "expert report" is defined as:

a report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id.* § 74.351(r)(6). In turn, "expert" means, *inter alia,*:

with respect to a person giving opinion testimony regarding whether a *physician* departed from accepted standards of medical care, an expert qualified to testify under the requirements of Section 74.401;

with respect to a person giving opinion testimony regarding whether a *health care provider* departed from accepted standards of health care, an expert qualified to testify under the requirements of Section 74.402.

*Id.* § 74.351(r)(5)(A), (B) (emphasis added). Under section 74.401, only a physician may qualify as an expert regarding whether a physician departed from accepted standards of medical care. *Id.* § 74.401(a). According to section 74.402, in contrast, in a suit involving a health care liability claim against a health care provider, another health care provider may qualify as an expert witness on the issue of whether the health care provider departed from accepted standards of care. *Id.* § 74.402(b). Finally, under subsection 74.351(r)(5)(C), only a physician may render opinions regarding causation in an expert medical report.[5] *Id.* § 74.351(r)(5)(C).

▮▮▮ We apply an abuse-of-discretion standard in reviewing a trial court's decision on a motion to dismiss in which a defendant claims the expert opinion was

---

5. At oral argument, appellant's attorney acknowledged that an entirely new report authored by a physician would be necessary to address causation.

untimely served. *Mokkala v. Mead,* 178 S.W.3d 66, 70 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). An abuse of discretion occurs when a trial court acts in an unreasonable and arbitrary manner, or when it acts without reference to any guiding principles. *Id.* We defer to the trial court's factual determinations, but review questions of law de novo.[6] *Id.* Thus, to the extent resolution of the issue before the trial court requires interpretation of the statute itself, we apply a de novo standard. *Id.*

### B. The Expert Report

■ In his first issue, Davis contends the trial court erred in dismissing his claims rather than granting a 30–day extension to cure any deficiencies in his report. In its order of dismissal, the trial court noted as follows:

> The Court concludes that under the facts of this case and the applicable law, no "expert report" has been served. Accordingly, the Court has no basis to reach the plaintiff's request for a 30–day extension to cure any deficiency found in the proffered report. In the event [the] reviewing court(s) disagree with the conclusion that no "expert report" has been served, this Court grants such extension effective the date the reviewing court(s) issue a mandate to this court. Because this Court concludes that no "expert report" was served, the Court hereby dismisses plaintiff's claims against defendant Webb with prejudice.

Davis asserts that the report filed by Pass was merely a deficient report curable pursuant to subsection 74.351(c) of the Code, rather than "no expert report."[7] According to Davis, section 74.402 of the Code should apply when determining the statutory qualifications of an expert in this case because Davis's post-operative treatment, although provided by a physician, could have been provided by an optometrist. As noted above, section 74.402 establishes the qualifications of an expert witness testifying on the issue of whether a health care provider departed from accepted standards of care. TEX. CIV. PRAC. & REM.CODE ANN. § 74.402 (Vernon 2005). And Pass meets the statutory definition of a health care provider. *See id.* § 74.001(a)(12)(vi) (defining an optometrist as a "health care provider").

Webb responds that, because he is a physician, section 74.401 of the Code establishes the necessary qualifications for an expert providing an expert report regarding the care rendered by a physician.

---

**6.** Our sister court has cited *Mokkala* for the proposition that the standard of review under section 74.351 is abuse of discretion even when an appeal involves an issue of statutory interpretation. *See Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez,* 237 S.W.3d 869, 871 n. 1 (Tex.App.-Houston [1st Dist.] 2007, no pet. h.); *Intracare Hosp. N. v. Campbell,* 222 S.W.3d 790, 795 (Tex.App.-Houston [1st Dist.] 2007, no pet.). But in *Mokkala,* we specifically identified the de novo standard of review as appropriate when resolving issues involving statutory interpretation, contrary to our sister court's interpretation of this case. *Mokkala,* 178 S.W.3d at 70.

**7.** We note that a trial court is not required to permit an extension when a report is deficient as to one or more elements; the statutory language leaves the determination of whether to permit an extension to the trial court's discretion. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(c). Although the trial court stated in its dismissal order that it would have granted a 30–day extension had it found the report merely deficient, such language is mere surplusage and has no bearing on whether the trial court abused its discretion in dismissing Davis's suit. *See, e.g., Valley Mun. Util. Dist. No. 2 v. Hild,* 578 S.W.2d 827, 829 (Tex.Civ. App.-Houston [1st Dist.] 1979, no writ) (stating that recitations in a dismissal order that do not constitute a judgment are mere surplusage).

As discussed *supra*, this section provides that only a physician may qualify as an expert witness on the issue of whether a physician departed from accepted standards of medical care.[8] *Id.* § 74.401(a). The term "physician" is defined to include, as is relevant here, those individuals licensed to practice medicine. *Id.* § 74.001(a)(23). An optometrist, on the other hand, is licensed to practice optometry rather than to practice medicine. *See* TEX. OCC.CODE ANN. § 351.002(4), (6), (7), (9) (Vernon 2004).[9]

Davis cites no cases in which an expert report by a health care provider such as an optometrist concerning the standard of care required of and allegedly breached by a physician has been determined to constitute a good faith effort to comply with the statutory scheme. Instead, Davis relies on *Leland v. Brandal*, a case in which a dentist was sued for malpractice and the plaintiff provided expert reports by an anesthesiologist. 217 S.W.3d 60, 62 (Tex.App.-San Antonio 2006, pet. granted). The dentist appealed the denial of his motion to strike the expert report. *Id.* The Fourth Court of Appeals determined that the anesthesiologist had not established that he was qualified to express an expert opinion regarding the injuries alleged. *Id.* The court further concluded that a report had been filed, but was deficient. *Id.* Thus, the trial court had discretion to grant a 30–day extension under subsection 74.351(c). The appellate court reversed and remanded so

that the trial court could consider such an extension. *Id.*

Likewise, in *Foster v. Zavala*, on which Davis also relies, a podiatrist appealed the trial court's denial of his motion to dismiss. 214 S.W.3d 106, 108–09 (Tex.App.-Eastland 2006, pet. filed). The expert report served by Zavala was provided by a cardiovascular surgeon. *Id.* at 109. Because Zavala's expert was not practicing health care in a field of practice that involved the same type of care or treatment as the podiatrist, the Eleventh Court of Appeals reversed and remanded to permit the trial court to consider whether to grant a 30–day extension under section 74.351(c). *Id.* at 117.

These cases are readily distinguishable from Davis's suit. First, a physician authored the expert reports in each of these cases, which is specifically authorized by subsections 74.351(r)(5)(D) (dentist) and (E) (podiatrist). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(5)(D), (E) (Vernon Supp.2007). But, as discussed above, Pass is not a physician. Thus, he is barred by statute from offering an expert opinion regarding medical causation or the alleged breach of the standard of care applicable to a physician. *See id.* § 74.351(r)(5)(A) and (C). Second, the trial courts in both *Leland* and *Foster* did not dismiss the plaintiffs' lawsuits; instead, the defendants appealed the trial court's denial of their motions to dismiss. Here,

---

8. This section permits the trial court to accept an expert report that departs from the criteria only if, "under the circumstances, the court determines that there is a good reason to admit the expert's testimony. The court shall state on the record the reason for admitting the testimony if the court departs from the criteria." *Id.* § 74.401(d) (Vernon 2005).

9. Optometrists are regulated by the State Optometry Board. *Id.* §§ 351.002–.608 (Vernon 2004 & Supp.2007). Regulations affecting optometrists are included in Title 3, Health

Professions, but under Subtitle F, "Professions Related to Eyes and Vision." *Id.* Physicians, however, are regulated in Subtitle B of Title 3, "Physicians." *Id.* §§ 151.001–165.160. Physicians are regulated by the State Board of Medical Examiners and are licensed to practice medicine. *Id.* §§ 152.001, 155.001. Indeed, section 155.001 explicitly states, "A person may not practice medicine in this state unless the person holds a license issued under [Subtitle B]." *Id.* § 155.001.

the trial court dismissed Davis's case when it determined that no "expert report" had been filed because, under the statutes governing expert reports, Pass is not qualified to offer an expert opinion applicable to Webb. And Davis has provided no support for his argument that filing an expert report authored by an optometrist constitutes a good faith effort to comply with the statutory requirements for an expert report in a health care liability claim against a physician. Moreover, as noted above, even if Pass were qualified to render opinion testimony regarding the standard of care, he still is not qualified to render opinion testimony about the causal relationship between Webb's alleged departure from the standard of care and Davis's injuries because he is not a physician. *See id.* § 74.351(r)(5)(C).

In sum, Davis has provided no authority supporting his contention that Pass meets the statutory requirements for an expert in a medical malpractice claim against a physician. *See id.* § 74.401 (Vernon 2005). Moreover, nothing in section 74.351(c) indicates that a report authored by an individual who is not statutorily qualified to offer an expert opinion is a deficient report curable by a discretionary 30–day extension, rather than "no expert report," as the trial court determined here. *See Danos v. Rittger,* —— S.W.3d ——, 2007 WL 625816, at *3–4 (Tex.App.-Houston [1st Dist.] March 1, 2007, pet. filed); *see also Chisholm v. Maron,* 63 S.W.3d 903, 905 (Tex.App.-Amarillo 2001, no pet.) (determining that because expert was not qualified, no report was filed under the predecessor statute); *Cuellar v. Warm Springs Rehab. Found.,* No. 04–06–00698–CV, 2007 WL 3355611, at *3 (Tex.App.-San Antonio Nov.14, 2007, no pet. h.) (mem.op.) (concluding that reports authored by individuals not statutorily qualified as experts constituted "no report" and did not constitute a "good faith effort" to comply with the statutory re-

quirements); *De La Vergne v. Turner,* No. 04–06–00722–CV, 2007 WL 1608872, at *1 (Tex.App.-San Antonio June 6, 2007, no pet.) (mem.op.) (reasoning that because plaintiff could cure deficiency only by obtaining a new report from a physician, trial court did not abuse its discretion in denying motion for grace period); *Methodist Health Ctr. v. Thomas,* No. 14–07–00085–CV, 2007 WL 2367619, at *4 (Tex.App.-Houston [14th Dist.] Aug. 21, 2007, no pet.) (mem.op.) (determining that plaintiffs could comply only with the statutory requirements by filing a "wholly new report by a different expert" and therefore a thirty-day extension was not available).

Under these circumstances, we conclude the trial court was within its discretion to dismiss the case. Thus, we overrule Davis's first issue.

### C. Award of Costs and Attorneys' Fees

Under subsection 74.351(b)(1), the trial court must enter an order awarding reasonable attorneys' fees and costs of court when dismissing a case for failure to timely serve the required expert report. *See* TEX. CIV. PRAC. & REM.CODE § 74.351(b)(1). Because dismissal of Davis's suit was appropriate, the award of costs and fees was also proper. *See id.* (stating that the court shall enter an order awarding reasonable attorneys' fees and costs on motion of defendant, subject to the trial court's exercise of discretion to grant a 30–day extension under subsection (c)). Accordingly, we overrule Davis's second issue.

### IV. CONCLUSION

We conclude the trial court did not abuse its discretion in holding that Davis failed to timely file the statutorily required expert report. Thus, we overrule Davis's first issue. Because the trial court did not

abuse its discretion in dismissing Davis's lawsuit, its award of attorneys' fees and costs was appropriate. We therefore overrule Davis's second issue and affirm the trial court's judgment.

FRANK C. PRICE, Senior Justice, concurring.

FRANK C. PRICE, Senior Justice, concurring (Assigned).

Appellant William Davis brought suit against John Q.A. Webb, Jr. M.D., for his failure to provide appropriate post-operative treatment. This failure led to serious medical problems for which Davis sought recovery, but that recovery was barred because of a defect in his expert report. Although timely served, the expert report did not reflect the opinion of a "physician" under Texas Civil Practice and Remedies Code section 74.401. Instead, Davis offered the expert opinion of an optometrist who was proficient and trained in post-operative treatment and care. The trial court dismissed the lawsuit with prejudice, and a majority of this court upheld that dismissal, in accordance with the statutory requirements of Texas Civil Practice and Remedies Code sections 74.351 and 74.401. Unfortunately, sections 74.351 and 74.401 were drafted, in all likelihood inadvertently, in such a way as to create the occasional miscarriage of justice. Hence, although I agree the majority opinion is in accord with a plain reading of these sections, I cannot agree with the application of this statute under these circumstances for two reasons.

First, when a physician is engaged in the work that only a physician may render, the requirement that another physician opine concerning that treatment logically follows. When, however, a physician fails to provide the type of treatment he could have delegated to another, or the type of treatment another often performs, this negligence should not be shielded by his medical degree. In these situations, the physician is "wearing another hat," and the individuals who most often adorn that hat might be aptly trained to opine as to the standard of care or causation. Such might be true when a physician performs medical care at the site of an accident where an EMT would be best qualified to testify as to on-scene standards of care, or when a physician refers an injured patient to a physical therapist or chiropractor who, though not a physician, may have greater training and experience in rehabilitation and might be best qualified to opine as to causation in a review of post-operative care. Such is arguably true, as in the present case, where an optometrist is well-trained in post-operative treatment and is often charged by an ophthalmologist to conduct this very care. When a doctor provides the type of after-care that another professional could provide, and does so negligently, his credentials should not force the plaintiff to face a higher predicate to bringing suit. In fact, the non-physician professional may be more equipped to perform the follow-up treatment, and that non-physician may be the more appropriate person to opine on the quality of treatment provided.

Second, our application of Texas Civil Practice and Remedies Code sections 74.351 and 74.401 creates a dual standard in our courts, whereby an individual cannot be an expert for the purposes of an expert report *unless he is a physician,* but for the same individual to testify at trial the court could conduct the more permissive *Daubert/Robinson* test. *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *E.I. du Pont de Nemours and Co., Inc. v. Robinson,* 923 S.W.2d 549 (Tex.1995). If the court is capable of being the gatekeeper at trial, the same latitude should be

allotted the court in analysis of the expert report.

The Legislature drafted Texas Civil Practice and Remedies Code sections 74.351 and 74.401 with an eye toward reducing the number of frivolous medical malpractice lawsuits in Texas, but in so doing failed to consider many possible scenarios where an expert who is not a physician might be qualified to opine as to the standard of care and/or causation in a case pursued against a physician.

Accordingly, while concurring in the disposition of this case under the current law, I believe the application of the law to all fact-scenarios is problematic and can lead to the miscarriage of justice in some instances.