

## NUMBER 13-16-00266-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**MATAGORDA NURSING AND
REHABILITATION CENTER, L.L.C.,**            **Appellants,**

**v.**

**ALVIN BROOKS, III, INDIVIDUALLY AND
AS PERSONAL REPRESENTATIVE OF
THE ESTATE OF ALVIN BROOKS, JR.,
HARRY BROOKS, AND JESSIE LEE BROOKS,**       **Appellees.**

---

### On appeal from the 23rd District Court
### of Matagorda County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Contreras, and Longoria
### Memorandum Opinion by Justice Contreras[1]

This is an appeal regarding expert reports filed in a health care liability claim. *See*

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West, Westlaw through 2015 R.S.).

---

[1] Justice Dori Contreras, formerly Dori Contreras Garza. *See* TEX. FAM. CODE ANN. § 45.101 *et*

Appellants Matagorda Nursing and Rehabilitation Center, LLC ("MNRC") and TAG MGT Services, LLC contend by two issues that the trial court erred by denying their motion to dismiss a claim brought by appellees Alvin Brooks, III, individually and as personal representative of the estate of Alvin Brooks Jr., Harry Brooks, and Jessie Lee Brooks. We reverse and remand.

## I. BACKGROUND

Alvin Brooks Jr. was admitted to MNRC, a nursing home, on or about December 12, 2014. On December 19, 2014, Brooks fell while trying to get out of his bed. One week later, MNRC staff discovered that he had suffered a cervical spine fracture. He was then transferred to Matagorda Regional Medical Center ("Matagorda Regional").

Appellees filed suit on October 1, 2015, alleging that appellants were negligent by failing to "provide a safe environment," failing to protect Brooks from "avoidable injury," failing to "assess and manage" Brooks's risk for falls, and failing to "properly train its employees." The petition alleged that, as a result of appellants' negligence, Brooks suffered physical pain and mental anguish, and incurred medical expenses. Appellants filed an answer on November 2, 2015.

On September 8, 2015, appellees furnished an expert report by Vanessa Neyra, a registered nurse. *See id.* Neyra opined, among other things, that the nurses at MNRC "failed to identify [Brooks] as a high fall risk" and "failed to implement fall precautions," and that Brooks "fell as a result of nursing negligence." Appellants filed objections to Neyra's report on November 13, 2015, contending that Neyra lacked the qualifications necessary to address proximate cause and that her opinions regarding causation were conclusory and speculative.

---

*seq.* (West, Westlaw through 2015 R.S.).

2

Brooks died on February 18, 2015, with the death certificate listing "sepsis, respiratory and renal failure" as the cause of death. Subsequently, appellees filed an additional expert report by Paul B. Radelat, M.D., a pathologist. Appellants again objected to the report on grounds that the author was not qualified to address proximate cause and that the report was insufficient to show proximate cause. On February 29, 2016, appellees filed amended reports by both Neyra and Dr. Radelat.

Appellants moved to dismiss the suit on March 9, 2016, arguing that appellees' two expert reports failed to comply with the requirements of the Texas Medical Liability Act ("TMLA") and that 120 days had passed since appellants filed their answer. *See id.* Appellees filed a response along with a motion for a thirty-day extension of time to file a compliant report, should the reports be found insufficient. Without a hearing, the trial court denied the motion to dismiss and this interlocutory appeal followed. *See id.* § 51.014(a)(9) (West, Westlaw through 2015 R.S.) (authorizing appeal of interlocutory order denying motion to dismiss for failure to file a medical expert report under the TMLA).

## II. DISCUSSION

The TMLA, codified in chapter 74 of the civil practice and remedies code, requires a plaintiff asserting a health care liability claim to serve a report by a qualified expert on the defendant or the defendant's attorneys within 120 days after each defendant's original answer is filed. *Id.* § 74.351(a).[2] We review a trial court's decision with respect to chapter

---

[2] Appellees do not dispute that their claim is a "health care liability claim" under the TMLA and therefore subject to the expert report requirement. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (West, Westlaw through 2015 R.S.) (defining "health care liability claim" as "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant"); *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504 (Tex. 2015) (holding that, for claims alleging that a health care provider departed from accepted standards of safety, "there must be a substantive nexus between the safety standards allegedly violated and the provision of health care" in order for the claim to be a "health care liability claim" subject to the expert report requirement under the TMLA).

3

74 expert reports and the qualifications of experts for an abuse of discretion. *Omaha Healthcare Ctr., LLC v. Johnson*, 344 S.W.3d 392, 398 (Tex. 2011); *Larson v. Downing*, 197 S.W.3d 303, 304–05 (Tex. 2006); *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). The trial court abuses its discretion if it acts unreasonably or arbitrarily or without reference to any guiding rules or principles. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015).

Appellants argue on appeal that (1) neither Neyra nor Radelat were qualified to give an opinion on proximate causation, and (2) neither report established any causal connection between appellants' alleged negligence and the alleged damages suffered. Appellants further argue that the reports are so deficient as to constitute "no report" and that the trial court may not grant a thirty-day extension to cure. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c).

## A.  Expert Qualifications

By their first issue, appellants contend that "neither of the Appellees' expert witnesses were qualified to opine on proximate cause." Section 74.403 of the TMLA provides as follows:

> Except as provided by Subsections (b) [regarding suits against a dentist] and (c) [regarding suits against a podiatrist], in a suit involving a health care liability claim against a physician or health care provider, a person may qualify as an expert witness on the issue of the causal relationship between the alleged departure from accepted standards of care and the injury, harm, or damages claimed only if the person is a physician and is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence.

*Id.* § 74.403(a) (West, Westlaw through 2015 R.S.); *see id.* § 74.351(r)(5)(C) (stating that, "with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable

4

standard of care in any health care liability claim," an "expert" is defined as "a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence").

Texas Rule of Evidence 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact issue. TEX. R. EVID. 702; *see Tenet Hosps., Ltd. v. Garcia*, 462 S.W.3d 299, 306 (Tex. App.—El Paso 2015, no pet.) (holding that "[s]ection 74.351(r)(5)(C) incorporates the rules of evidence in the context of the expert's qualifications, not the substance of the opinion itself").

An expert's qualifications to opine on the subject matter at issue must be shown within the four corners of the expert's report or its required accompanying curriculum vitae, and cannot be inferred. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 463 (Tex. 2008) (orig. proceeding); *Salais v. Tex. Dep't of Aging & Disability Servs.*, 323 S.W.3d 527, 536 (Tex. App.—Waco 2010, pet. denied); *Estorque v. Schafer*, 302 S.W.3d 19, 26 (Tex. App.—Fort Worth 2009, no pet.). A professional need not be employed in the particular field about which he is testifying so long as he can demonstrate that he has "knowledge, skill, experience, training, or education" regarding the specific issue before the court that would qualify him to give an opinion on that subject. *See Broders v. Heise*, 924 S.W.2d 148, 153–54 (Tex. 1996); *see also Christus Health Sys. v. Harlien*, No. 13-09-00446-CV, 2011 WL 2394614, at *4 (Tex. App.—Corpus Christi June 9, 2011, pet. denied) (mem. op.). But merely being a physician is insufficient to qualify a witness as a medical expert. *In re Commitment of Bohannan*, 388 S.W.3d 296, 304 (Tex. 2012); *see Broders*, 924 S.W.2d at 152.

5

### 1. Neyra

Neyra's report states that she is a registered nurse licensed to practice in Texas and with over fifteen years of experience. The TMLA, however, states that an "expert" with respect to proximate cause must be a physician. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.351(r)(5)(C), 74.403(a). Accordingly, as appellees concede on appeal, Neyra is not qualified to opine on causation. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.351(r)(5)(C), 74.403(a); *see also JSC Lake Highlands Operations, LP v. Miller*, No. 05-15-01373-CV, 2016 WL 4575536, at *4 (Tex. App.—Dallas Aug. 31, 2016, pet. filed) (mem. op.) (concluding that a report could not satisfy the TMLA's expert report requirement as to causation because its author was not a physician); *Rio Grande Reg'l Hosp. v. Ayala*, No. 13-11-00686-CV, 2012 WL 3637368, at *9 (Tex. App.—Corpus Christi Aug. 24, 2012, pet. denied) (mem. op.) (same). We sustain appellants' first issue as to Neyra's report.

### 2. Radelat

We next consider Dr. Radelat's qualifications. According to his curriculum vitae, which was attached to his reports, Dr. Radelat has practiced as a board-certified clinical and anatomic pathologist for over half a century. His past positions include a teaching fellowship at Columbia University College of Physicians and Surgeons in New York; Chief of Laboratory Service at the United States Naval Hospital in Annapolis, Maryland; Chief Deputy Medical Examiner in Clark County, Nevada; Assistant Professor of Clinical Pathology at Baylor University; Chief of Pathology at Christus St. Catherine Hospital in Katy, Texas; and staff pathologist positions at various hospitals. He has also been a licensed attorney since 1969 and was an adjunct professor of law at the University of Houston Law Center.

Dr. Radelat's amended report states, in its entirety, as follows:

I have been a board certified anatomic and clinical Pathologist since 1962. I have been on the active staff of St. Joseph's Hospital in the Department of Pathology in Houston, Texas. I have been on the courtesy staff in the Department of Pathology at St. John's Hospital, Clear Lake, Texas. I have been on the active staff of Brownsville Regional Medical Center in Brownsville, Texas. At the present time, I am on the active staff of Clearlake Regional Medical Center in Webster, Texas. I have performed thousands of autopsies over my 45 years of practice, some which have included the same or similar facts as seen in the case involving Mr. Brooks.

I have conducted this study in order to form an opinion/opinions as to the cause of Mr. Brooks C-1 neck fracture and his untimely death. All such opinions expressed below are based upon a reasonable degree of medical probability.

As you requested,[3] I have studied medical records from [MNRC], a County of Matagorda Certificate of Death and a written report from Vanessa Neyra, RN, dated 9/8/15 and the records from [Matagorda Regional]. Subsequent to my study of the above material, I have received and studied a History and Physical dated 1/7/15 and a Transfer Summary dated 1/8/15 both signed by Shanta L. D'Lima, MD and Radiology Reports dated 12/27/14, 1/7/15 and 1/20/15, all relating to Alvin Brooks. I have conducted this study in order to develop opinions as to Mr. Brook[s]'s general state of health and if possible the cause of his death.

From these records, it appears that Mr. Brooks was 67 years of age at the time of his death, 2/18/15. The Certificate of Death cites sepsis, respiratory and renal failure. The History and Physical of 1/7/15 authored by Dr. D'Lima lists a past medical history of coronary artery disease, BPH and osteoarthritis. His past surgical history includes insertion of a PEG feeding tube and a TURP.

Prior to his examination and treatment at [Matagorda Regional] on 1/7/15, Mr. Brooks, since 12/12/14, had been a resident at [MNRC]. On admission there, maladies of discoordination, cataracts, lower limb contractures, dehydration, excessive weight loss, indwelling Foley catherter [sic], incontinence of bowels and altered mental status had been additionally noted. While attempting to get from his bed at [MNRC] on 12/19/14, he fell to the floor. Beginning the day of the fall, he began to complain of neck pain. The history from the records of [MNRC] as well as what is well known from medical studies, the forces generated from falling can cause the type of fracture that is seen in the diagnostic studies that I have reviewed. On 12/26/14 in the late evening he was found with a bed sheet around his neck. Rightly or wrongly this was interpreted as an unsuccessful suicide attempt.

_____
[3] The report was addressed to appellees' counsel.

His primary care physician was notified the morning of 12/27/14 who then transferred him to [Matagorda Regional] for diagnostic testing. Later that day radiographic examination demonstrated a C-1 fracture of the right anterior and posterior arches with moderate displacement of the fragment thus created to the right. This fracture was further confirmed by follow-up x-ray examinations at [Matagorda Regional] on 1/07/15 and 1/20/15. These follow-up examinations showed slight drift of the fracture fragment still further to the right with early signs of healing.

The Certificate of Death indicates that death occurred at [Matagorda Regional], 2/18/15. I have reviewed the medical records from [Matagorda Regional] describing the last few weeks of the decedent's life. Based on what I have been able to learn the diagnoses listed on that document seem reasonably medically probable as to the death of Alvin Brooks in addition to the trauma he sustained from the fall and subsequent C-1 fracture.

As to the contributory role that the fall and C-1 fracture might have played in the demise of this patient, the fracture and ensuing pain could have resulted in more immobility and thus hastened his debility and death. There can be little doubt that in reasonable medical probability the C-1 fracture did cause some degree of pain and suffering and was the result of his fall on 12/19/15 while a patient at [MNRC].

I reserve the right to modify these opinions if additional information makes that appropriate.

It is apparent, from his report and his curriculum vitae, that Dr. Radelat is a highly experienced and accomplished clinical and anatomic pathologist. Nevertheless, appellants argue that his report and curriculum vitae are "completely silent as to any qualifications to opine on the proximate cause of injuries allegedly sustained by a nursing home resident." They argue that he "does not demonstrate any qualification or expertise in determining the cause of a nursing home resident's injuries in general, or [Brooks's] injuries and damages specifically, much less the qualification and expertise required to opine as to the proximate cause of the damages sought in this case."

Appellants cite *Broders v. Heise*, in which the Texas Supreme Court found that the trial court did not err in excluding expert causation testimony by an emergency room physician under Rule 702. 924 S.W.2d at 154. In that case, the plaintiffs alleged that the

8

defendant emergency room doctors were negligent, causing their daughter's death, by failing to promptly diagnose her head injury and by prescribing certain medications. *Id.* at 150. The plaintiffs' expert, Dr. Condo, testified without objection as to the applicable standard of care, that the defendants failed to meet that standard, and that it was foreseeable that an untreated head injury could lead to death. *Id.* However, the trial court sustained objections to Dr. Condo's additional testimony, offered by bill of exception, that the patient's death was caused in part by the fact that "there was no treatment" and that, but for the negligence, the patient would have survived. *Id.* at 151. The supreme court concluded that this was not an abuse of discretion, reasoning as follows:

> Dr. Condo's medical expertise is undoubtedly greater than that of the general population, but the [plaintiffs] did not establish that his expertise on the issue of cause in fact met the requisites of Rule 702. While he knew both that neurosurgeons should be called to treat head injuries and what treatments they could provide, he never testified that he knew, from either experience or study, the effectiveness of those treatments in general, let alone in this case. On this record, the [plaintiffs] simply did not establish that Dr. Condo's opinions on cause in fact would have risen above mere speculation to offer genuine assistance to the jury.

*Id.* at 153. Appellants cite several other cases where appellate courts have determined that expert witnesses, though physicians, were not qualified under Rule 702 to opine on causation. *See Tenet Hosps. Ltd. v. De La Riva*, 351 S.W.3d 398, 407 (Tex. App.—El Paso 2011, no pet.) (finding, where plaintiff alleged that her infant daughter suffered hypoxic brain damage as a result of negligence, that the trial court did not abuse its discretion in determining obstetrician/gynecologist was not qualified to opine as to causation because there was no showing that he had any experience in pediatric neurology or perinatology); *Murphy v. Mendoza*, 234 S.W.3d 23, 29 (Tex. App.—El Paso 2007, no pet.) (noting, where plaintiff alleged that defendant pathologists were negligent in reading his bladder biopsy, resulting in unnecessary surgery, that a surgical pathologist

9

expert "[did] not explain how or whether his qualifications as a surgical pathologist qualify him to render an opinion on [plaintiff]'s surgical treatment"); *see also Alonzo v. Lampkin*, No. 07-12-00030-CV, 2013 WL 6073431, at *5 (Tex. App.—Amarillo Nov. 13, 2013, no pet.) (mem. op.) (finding, where plaintiff alleged that she suffered an hypoxic event and brain damage as the result of being prematurely discharged from the hospital following a hysterectomy, that the trial court did not abuse its discretion in excluding obstetrician/gynecologist's testimony as to causation because there was no showing he had "any experience, training or education in the field of neurology or, more specifically, brain injuries"); *Methodist Health Care Sys. of San Antonio, Ltd. v. Rangel*, No. 04-05-00500-CV, 2005 WL 3445994, at *5 (Tex. App.—San Antonio Dec. 14, 2005, pet. denied) (mem. op.) (holding, where plaintiff alleged that doctors performed surgery on the wrong testicle, that "nothing in the report or [his] curriculum vitae establishes that [expert emergency room physician] has the experience or training to testify that if a surgical procedure is erroneously performed on a left testicle as opposed to a right testicle it would proximately cause" various injuries).

We believe these cases are analogous to the instant case. Appellees' live petition alleged specifically that appellants were negligent by failing to provide Brooks with "a safe environment," failing to protect him from "avoidable injury," failing to "assess and manage" his risk for falls, and failing to "properly train" their employees. Appellees therefore had the burden to establish that Dr. Radelat had some "knowledge, skill, experience, training, or education" regarding whether those alleged failures caused Brooks's injuries. Having performed thousands of autopsies in his career, Dr. Radelat is undoubtedly an experienced pathologist, but there is nothing in the report or curriculum vitae explicitly addressing whether, or how, his vast experience as a pathologist qualifies him to opine

10

on whether appellants' negligence caused Brooks's injuries. *See Estorque*, 302 S.W.3d at 26 ("Qualifications must appear in the expert report and cannot be inferred."). In particular, there is nothing in the report or curriculum vitae indicating that Dr. Radelat has any "knowledge, skill, experience, training, or education" relevant to determining whether the failure to abide by nursing safety standards, as alleged in appellees' live petition, could or would proximately cause a patient to fall while trying to get out of his bed and thereby break his neck.

For the foregoing reasons, we conclude that Dr. Radelat's report and his curriculum vitae do not establish that he is qualified to opine on causation under the facts of this case. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.403(a); TEX. R. EVID. 702; *In re McAllen Med. Ctr.*, 275 S.W.3d at 463; *Broders*, 924 S.W.2d at 153.

### 3. Summary

Because neither report provided by appellees was authored by a witness qualified under the TMLA to opine regarding causation, the trial court erred in denying appellants' motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.403(a). We sustain appellants' first issue.[4]

## B. 30-Day Extension

Appellants additionally argue that the trial court may not grant appellees a thirty-day extension of time in order to file a report that is compliant with the statute. We disagree.

---

[4] In light of our conclusion, we need not address appellants' second issue. *See* TEX. R. APP. P. 47.1. We note, however, that although Dr. Radelat made clear in his report that Brooks's fall from his bed caused his cervical fracture and that the fracture caused Brooks to suffer pain, the report does not indicate that appellants' negligence proximately caused Brooks to fall from his bed.

11

Under the TMLA, "[i]f an expert report has not been served within the period specified . . . because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency." *Id.* § 74.351(c). The Texas Supreme Court has stated that a thirty-day extension to cure deficiencies in an expert report under section 74.351(c) "may be granted if the report is served by the statutory deadline, if it contains the opinion of an individual with expertise that the claim has merit, and if the defendant's conduct is implicated." *Scoresby v. Santillan*, 346 S.W.3d 546, 557 (Tex. 2011).

Here, the two expert reports were timely filed. We have already held that Dr. Radelat's report and curriculum vitae did not establish that he was qualified under the TMLA to opine as to causation with respect to the specific allegations made by appellees. Appellants argue that this fact alone renders a thirty-day extension unavailable. They cite several cases in which appellate courts have held that a report authored by an individual who is not statutorily qualified to offer an expert opinion is considered "no report" and therefore does not entitle the claimant to a thirty-day extension. *See, e.g., Davis v. Webb*, 246 S.W.3d 768, 774 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Chisholm v. Maron*, 63 S.W.3d 903, 905 (Tex. App.—Amarillo 2001, no pet.); *see also Cuellar v. Warm Springs Rehab. Found.,* No. 04-06-00698-CV, 2007 WL 3355611, at *4 (Tex. App.—San Antonio Nov. 14, 2007, no pet.) (mem. op.). However, these cases were decided before *Scoresby*, which imposed a new, more "lenient" standard for the section 74.351(c) extension, and which explicitly stated that "[a]n individual's lack of relevant qualifications and an opinion's inadequacies are deficiencies the plaintiff should be given an opportunity to cure if it is possible to do so." *Scoresby*, 346 S.W.3d at 555. Appellees' failure to show

that Dr. Radelat was statutorily qualified to opine on causation does not, by itself, render a thirty-day extension unavailable under *Scoresby*. *See id.*

In any event, it is undisputed that Neyra was qualified to opine as to the standard of care applicable to appellants. Moreover, her report concluded that appellants were negligent and that their negligence proximately caused Brooks's injuries. Neyra's report thus "contains the opinion of an individual with expertise that the claim has merit" and implicates appellants' conduct. *See Scoresby*, 346 S.W.3d at 557. Accordingly, we conclude that the trial court may grant a thirty-day extension. *See id.*; *see also Samlowski v. Wooten*, 332 S.W.3d 404, 411–12 (Tex. 2011) (noting that the trial court is in the best position to decide whether a cure is feasible); *Lewis v. Funderburk*, 253 S.W.3d 204, 208 (Tex. 2008) (stating that a deficient report may be cured by amending the report or by serving a new report from a separate expert that cures the deficiencies in the previously filed report).

### III. CONCLUSION

We reverse the trial court's judgment and remand for the trial court to determine whether to grant to appellees a thirty-day extension to file a report or reports that are compliant with the TMLA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c).

DORI CONTRERAS
Justice

Delivered and filed the
12th day of January, 2017.